SAMUEL CASTLEMAN ET AL. v. STATE OF MISSISSIPPI.

[47 South. 647.]

1. CHANCERY PRACTICE. *Injunction. Bond. Code* 1906, § 610.
    A bond, as required by Code 1906, § 610, is essential to the issuance of an injunction and one issued without it is void.
2. SAME. *Same. Restraining order.*
    Where, upon an application for injunction, a citation is issued requiring defendants to show cause why the injunction should not issue, the court cannot also issue a restraining order pending the hearing, as the order to show cause implies that defendant should not be restrained until after hearing.
3. SAME.
    A restraining order, upon issuing citation to show cause why an injunction should not be granted, is foreign to the practice in this state.
4. SAME. *Violating injunction. Contempt.*
    Where defendants were only charged with contempt for violating a restraining order, and the issues were made upon the violation of that order, they can only be tried on the charge as made; and the fact that the restraining order was issued on a bill amendatory of another bill on which a valid injunction had been granted was immaterial, as the order and bills must be considered separately.
5. SAME.
    A restraining order being void, defendant could not be adjudged guilty of contempt for violating it.

FROM the chancery court of Washington county.

HON. PERCY BELL, Chancellor.

Castleman and others, appellants, were adjudged guilty of contempt of court and fined for violating a restraining order, and appealed to the supreme court. The facts are stated in the opinion of the court.

*Campbell & Cashin* and *William Griffin,* for appellant.

The restraining order was void and ineffectual for want of bond, as required by the statute; and its violation was no con-

tempt. It is well settled law that where an injunction is void or ineffectual, it is no contempt to violate it, and that where its issuance is made, by order of the court, or by statute, dependent upon filing the bill, or upon giving bond, its issuance without filing the bill or giving bond makes it void and ineffectual. *Diehl v. Friester,* 37 Ohio St. 473; *Winslow v. Nayson,* 113 Mass. 411 *Ex parte Miller,* 129 Ala. 130; S. C., 87 Am. St. Rep. 49; 2 High, Injunctions, 1429; 22 Cyc. 923. A bond is a condition precedent to the issuance of a preliminary injunction (Code 1906, § 610), and, unless there be, in this state, a distinction between a restraining order and a preliminary injunction it necessarily follows that the restraining order in this case was ineffectual, and that, if violated by the appellants, they were not guilty of contempt.

High, and other text writers, distinguish such an order from a preliminary injunction, but only with respect to their duration, stating that a restraining order is intended to have effect until the hearing of an application for a preliminary injunction, and then it becomes *functus officio;* but they do not undertake to trace the history of restraining orders, or to show how such orders, as contradistinguished from preliminary injunctions were brought about. They simply treat them as being in practice in some jurisdictions, and refer to the decisions of those courts, wherein the practice exists, for distinction between them and preliminary injunctions; but it will be found, upon examination, we think, that, in all those jurisdictions the practice of issuing restraining orders as contradistinguished from preliminary injunctions, exists by virtue of statutory provisions, which forbid the granting of preliminary injunctions, without notice or a hearing of the parties, and which expressly authorize the issuance of restraining orders in the interim.

An Act of Congress (sec. 718, Revised Statutes), expressly provides for the issuance of a restraining order, because of a previous act of congress forbidding a preliminary injunction without notice to the parties concerned, and, so far as our re-

searches extend, statutes of similar import exist in all the states wherein the practice of issuing restraining orders is found.

The very object of our statute, requiring bond as a condition precedent to the issuance of a preliminary injunction, was to prevent injury; and such statute divests the courts of all discretion in that regard.

The chancellor erred in admitting evidence, over complainant's objection, of acts of violation other and different from those that were charged against them in the affidavit, which constitutes the basis of this proceeding.

*Mayes & Longstreet,* for appellees.

In answer to the first objection stated above, to the last writ or order issued against the Belzoni Oil Mill Company and its officers, that said order or writ was void because no bond had been executed by complainant under Code 1906, § 610, prior to its issuance, and that the same was void and could be safely disregarded by the defendants on that account, we beg to say: That under the course of the pleadings in this case, the execution of a further and additional bond was not necessary. The three bills of complaint being between the same parties practically constitute in a measure one litigation.

The second bill filed by the Yazoo & Mississippi Valley Railroad Company was only to make known the fact that under its view of the contract and the law, Castleman and the Belzoni Oil Company were one and the same; that Castleman had acted throughout as the representative of and for the benefit and advantage of the Belzoni Oil Mill, but that if the Belzoni Oil Mill was attempting to exercise rights in its own name under the conditions that it might be served with notice and brought in and made a party defendant, and that it should be identified with Castleman and that both should stand restrained. This bill was practically a supplemental bill only for the purpose of bringing in a new party in order that that party might be concluded by the final decree in the cause with respect to mat-

ters in which and about which the rights and liabilities of Castleman and the Belzoni Oil Mill were identified.

Under our practice, where purely restraining orders are not recognized, it is not necessary for a chancellor who has once required a bond in a controversy adequate to cover all damages to require a further and additional bond every time the court makes an order in the nature of a further or additional restraint. In other words, if an injunction is obtained against a principal, and it be then shown that one of his agents is proceeding, and that agent be enjoined, and it be further shown that still a third agent is proceeding under a guise of a different right, but being the same principal, it certainly would not be contended that any extension of the injunction writ and restraining order of the court to these successive agents and subagents would render any writ void which was issued pursuant to the orders of the court in the subsequently ensuing developments of the cause, simply because the court had not in such instance required a separate and distinct bond.

There is another view of the question which makes it certain that the order or writ of injunction or restraining order, whatever it may be termed, was not void and could not be safely disobeyed because of the failure of the defendant to execute and file prior to its issuance an additional bond.

In addition to the rights and powers inherent in our common-law courts, plenary power to grant and order the issuance of remedial writs, or writs of supersedeas, injunction, etc., is expressly granted by Code 1906, § 992.

Can it be maintained in reason or law, that a defendant enjoined from doing a pernicious or illegal thing can throw himself back and say: "I will disregard the order and will of the court, though I have actual knowledge of it, because I have learned of a technical objection that the party applying for the injunction has not given a bond?"

In urging the argument against this so-called restraining order, counsel for appellants have overlooked the fact that the

fiat of a chancellor or of a judge of the circuit court granting an injunction and restraining certain alleged wrongful acts, has full operative force and influence from the moment the defendant acquires knowledge of the fact of the grant of the writ or the issuance of the fiat. When he has brought home to him information and knowledge that he has been restrained from certain actions, from that instant the duty of obedience to the order and mandate of the court rests on him.

How could the order or the fiat, under this rule, have any validity if a bond must be first executed to render the dictates of the court of any vitality? This rule is recognized by our state.

"It is the duty of the parties to obey the injunction so long as it remains in force. The violation of an injunction is a contempt of the court from which the process issues, and is punishable by it as such. The defendant is bound at his peril to obey the injunction and if he is doubt as to what he may do without violating the injunction, he should ask a modification of it, or a construction of its terms. The punishment imposed is by fine or imprisonment, or both." *Maynard v. Hood,* 68 Ill. 121; *Shirk v. Cox,* 141 Ind. 301; *Wilbur v. Woolley,* 44 Neb. 739.

"To put a person in contempt for violating an injunction, it is necessary that he should have knowledge of the injunction. If, however, he has actual knowledge thereof, he is punishable as for contempt for its violation, although he has not been served with notice. It is altogether immaterial how the defendant acquired the information of the existence of the injunction, when once he has been apprized of the fact, he is legally bound to desist from what he is restrained and inhibited from doing." *Ullman v. Ritter,* 72 Fed. 1000; *Cape May Co. v. Johnson,* 35 N. J. Eq. 422.

MAYES, J., delivered the opinion of the court.

This is an appeal by Castleman and others from an adjudication of the chancery court of Washington county, adjudging

them guilty of a contempt for violating an order of the court given in an injunction proceeding. In reference to the question being litigated between complainants and defendants, several suits were filed, beginning with the suit filed by the Yazoo & Mississippi Valley Railroad Company against Castleman and the Delta Southern Railway on the 4th day of July, 1906, and numbered on the chancery docket of Washington county as 3,400, followed by the suit of the Belzoni Oil Co. against the Yazoo & Mississippi Valley Railroad Company and numbered 3,454, filed on August 11, 1906, and still further followed by the amended and supplemental bill to No. 3,450, filed on September 6, 1907, by the Yazoo & Mississippi Valley Railroad Company against Castleman, the Belzoni Oil Company, and the Delta Southern Railway. All of these proceedings prayed for injunctive relief. It is claimed that this last bill was simply amendatory of and supplemental to the first bill, filed by the Yazoo & Mississippi Valley Railroad Company against Castleman and the Delta Southern Railway, and is therefore to be treated just as if it was that first bill; but this amendatory and supplemental bill itself prays for injunctive relief, and on its prayer was issued the order which it is charged appellants violated. Bonds were duly executed in all the cases before the issuance of the writ of injunction, except in the case of the supplemental and amended bill, and in that no bond was filed or provided for by the chancellor after the restraining order was authorized.

We do not deem it necessary to follow the different suits begun, since the question of whether or not these parties were guilty of contempt must be determined by the particular proceeding under which it is alleged the contempt occurred and about which they were cited. When the supplemental and amended bill was filed praying for an injunction, the chancellor issued the following order: "The State of Mississippi, to the Delta Southern Railway Company, a corporation, S. Castleman, and the Belzoni Oil Company, a corporation—Greeting:

You will hereby take notice that an application has this day been made to the undersigned, chancellor of the chancery court of said county, in vacation, for an injunction commanding and enjoining you, your agents, and employees from in any way or manner connecting any railroad track or placing any frog or other appliances for a railroad crossing, or making any railroad connections whatever, for the purpose of crossing or getting onto or using in any manner those certain spur tracks and switches now situated on the property of the Belzoni Oil Company, and claimed to be the property of it and the Yazoo & Mississippi Valley Railroad Company, or from doing any act whatever that will obstruct in any way the use of the said spur tracks and switches by the said Yazoo & Mississippi Valley Railroad Company, and to remove any obstructions or connections made upon or with said spur tracks and switches, and to restore same, said application being made by the said Yazoo & Mississippi Valley Railroad Company, and that a hearing of said application and motion for injunction thereon has been set by me for hearing in my office, in the city of Greenville, Mississippi, on Thursday, the 12th day of September, A. D. 1907, at 9 o'clock a. m. You are therefore commanded hereby to appear at said time and place, in person or by attorneys, then and there to show cause, if any, why said application should not be granted, and said motion sustained, and said injunction granted as prayed; and until the hearing of said motion you are hereby restrained from doing or performing or permitting any of the acts or things herein above set forth."

This order shows that when the application was made no injunction was granted, but citation was issued to the defendants to show cause why an injunction should not be granted, fixing the 12th day of September, 1907, as the day on which same should be heard. After declining to grant the injunction, the chancellor further ordered that until the hearing of the motion the defendants should be "restrained from doing or performing or permitting any of the acts or things done about which

they were sought to be enjoined." In short, the chancellor declined to issue the injunction on the application without hearing the defendants, yet made an order restraining them from continuing their work, and thereby gave the same effect to the restraining order as would have been given to the injunction if he had granted it. The citation was served on September 7, 1907, requiring the parties to appear and show cause why the injunction should not issue on the 12th day of September following. On the 9th day of September, 1907, one John Pelley made affidavit before the chancellor charging that the defendants had violated the order of the court, and prayed that they be cited for contempt. The affidavit shows that the information filed by Pelley charges the parties with being in contempt for violating the restraining order, and recites as follows, viz.: "That on the 6th day of September, 1907, Hon. Percy Bell, chancellor of the chancery court of said county of Washington, in vacation, did issue and sign, and have delivered to the sheriff of said county to be executed and returned, a certain order of process, a copy of which is filed herewith, attached hereto, and made a part hereof, just as if the same were set out here in full." An agreement shows that the order referred to is the restraining order issued on the 6th day of September. On this affidavit the chancellor issued a citation to the defendants, reciting that it had been made to appear by affidavit of Pelley, that after the issuance and service of the restraining order, on September 7, 1907, the restraining order was violated by Castleman, etc. All of the record shows that the contempt charged was for a violation of the restraining order alone, and that as far as this proceeding is concerned, none of the other proceedings had in this litigation are involved.

We do not deem it necessary to consider the evidence offered to prove the alleged violation of the order, since the controversy must be determined by the validity of the order. We cannot treat this so-called restraining order as an injunction, because the very decree which restrains the parties also declines to issue

an injunction, and because no bond was given or required to be given, as required by Code 1906, § 610. Before any writ or order can be given the effect of an injunction, by whatever name the writ may be called, it is essential that a bond be required and given; and, if it is not, the injunction is a nullity. Section 610, Code of 1906; *Diehl v. Friester,* 37 Ohio St. 473; *Winslow v. Nayson,* 113 Mass. 411; *Ex parte Miller,* 129 Ala. 130, 30 South. 611, 87 Am. St. Rep. 49.

We are aware that there is authority holding differently; but it is clear that under our statutes these authorities cannot apply, since the statute is express in its declaration that a bond should be filed before an injunction should issue. When an application is made for an injunction, only three courses are open to the judge to whom the application is made. He must grant the injunction, or he must refuse it, or he must issue citation for the parties defendant to appear and show cause why an injunction should not issue. If the last course is pursued, it is of itself a declaration on the part of the judge that in his judgment the defendants should not be molested until they have had a hearing. A citation cannot be issued to show cause, and at the same time and in the same decree a restraining order issued to stop the defendants until they can be heard. If a judge may grant a restraining order for six days, having the effect of an injunction, without bond, he may grant one for a longer period. To uphold this order would be to defeat the requirement of the statute as to bond altogether. A temporary injunction is in effect a restraining order, but no temporary injunction can be issued without bond. A restraining order is not only foreign to our practice, but foreign to the necessities of same. In many jurisdictions a restraining order may be issued; but in the cases which we have examined on this subject it is because of a statute allowing it to be done, and the restraining order always requires a bond, and is very much the same in practice as a temporary injunction. The issuance of the restraining order under the facts of this case was a nullity.

But it is contended on the part of the state that, though the issuance of the restraining order might be void if it stood alone, and the appellants might not be liable for a contempt for·its violation, still they are liable under the facts of this case, because the restraining order was issued on a bill amendatory of and supplemental to another bill filed praying for an injunction, and wherein an injunction had been granted and a bond given. We cannot agree to this contention. For the purpose of this contempt proceeding, each of the bills filed must be treated as independent of the others. The charge against appellants is that they violated the restraining order—that, and that alone. No mention is made in the affidavit or in the citation of the violation of any order of the court save this restraining order. The issue is made upon this, and the facts considered must be upon the issue made. 9 Cyc. p. 47; Ency. Plead. & Prac. 1110, 1112. This order was void, and, being void, the appellants could not be held in contempt for a violation of same. Fletcher on Equity Plead. § 537; High on Injunction, vol. 2, § 1425.

*Reversed and dismissed.*