HANLEY v. PACIFIC LIVE STOCK CO.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1916.)

No. 2722.

1. COURTS ⬡⟿405(1)—CIRCUIT COURT OF APPEAL—APPEAL OR WRIT OF ERROR.

The appeal of a defendant in a water rights suit, from a decree finding him guilty of contempt in violating the injunction of a prior final decree of the District Court in such suit, can be reviewed in the Circuit Court of Appeals by appeal, the judgment not being primarily punitive in its nature, but being a judgment in a civil and remedial proceeding instituted to protect and enforce private rights.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1097; Dec. Dig. ⬡⟿405(1); Appeal and Error, Cent. Dig. § 3302.]

2. JUDGMENT ⬡⟿736—ESTOPPEL BY DECREE.

In a suit to determine water rights, where the bill called on a defendant to make full disclosure and discovery of his rights "for diverting

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the water from your orator's said land, and obstructing its flow therein, as is hereinabove charged," and to make answer "to the matters hereinabove stated and charged," which were confined to defendant's rights on the east fork of a river, defendant was not estopped by the decree as to his water rights in a, section of land on the west fork of the river.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1264, 1265; Dec. Dig. ☞736.]

3. JUDGMENT ☞707—RES JUDICATA—TRANSFER OF RIGHTS.

Where complainant in a suit to determine water rights omitted to bring in a landowner as a defendant, or to put his rights to the water in issue, and took a decree without determining such rights, he cannot complain that a party, to whom the land owner transferred his rights, continues to exercise them as the landowner might have exercised them both before and after the decree, whether a defendant in the suit or a third party acquired such rights.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. ☞707.]

4. JUDGMENT ☞704—RIGHTS DETERMINED.

In a suit to determine water rights, a defendant's right to the use of a, dam in a section of land on the west fork of a river was unaffected by the provision of the decree limiting and defining another defendant's right to the use of such dam.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229; Dec. Dig. ☞704.]

5. JUDGMENT ☞682(1)—EFFECT ON SUCCESSORS IN TITLE.

Where the right of the owner of two sections of land to the use of the waters of a river for irrigation was involved in and determined by a water rights suit, and it was determined that the owner had no right to divert water, corporations which acquired the sections from the owner had no such right, and their manager was guilty of contempt if he exercised such right.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1203; Dec. Dig. ☞682(1).]

6. INJUNCTION ☞230(1)—CONTEMPT PROCEEDINGS—QUESTION TRIABLE.

In a contempt proceeding against a defendant in a water rights suit for violation of the final decree therein, the question whether a party not a defendant to the suit, who transferred to defendant his right to irrigate, had no such right, so that defendant, his successor, received none, could not be tried.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–506, 509–513; Dec. Dig. ☞230(1).]

7. INJUNCTION ☞223(1)—VIOLATION OF WATER RIGHTS DECREE.

Where the river on which the lands of parties to a water rights suit were situated had overflowed through depressions in the bank from time immemorial, a defendant, for permitting the water of the river to flow as it was wont, or for draining his land by a ditch when it needed draining, so long as he did not use the ditch for irrigation, could not be held in contempt for violation of a decree enjoining him from impeding the flow of any water of the river upon complainant's lands as it had been wont to flow when not interfered with.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. ☞223(1).]

8. INJUNCTION ☞223(1)—VIOLATION OF WATER RIGHTS DECREE.

Where the decree in a water rights suit provided that a defendant should have the use of so much water as might run out of a river through overflow of its banks without obstruction, defendant was not guilty of contempt for permitting the overflow of water upon his lands through depressions in the bank of the stream, an overflow which he

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

did no act to induce, but diligently endeavored to prevent by closing gaps in the bank.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. ☞223(1).]

9. INJUNCTION ☞223(1)—VIOLATION OF WATER RIGHTS DECREE—NEGLIGENCE.

Where a defendant in a water rights suit, enjoined from obstructing the flow of a river, as soon as he received notice that it was claimed that the flow at his upper dam was obstructed by a small board and willow brush, caused the brush to be removed, though he was negligent in permitting the obstructions to remain in the river for three weeks, his negligence was not such as to amount to a willful contempt of court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. ☞223(1).]

10. CONTEMPT ☞60(3)—EVIDENCE.

In a contempt proceeding to enforce civil rights, the evidence of contempt must be convincing to justify a decree finding defendant in contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 185–187; Dec. Dig. ☞60(3).]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit by the Pacific Live Stock Company against William Hanley and others. From a decree adjudging plaintiff guilty of contempt in violating a prior decree of the court, defendant Hanley appeals. Judgment reversed, and cause remanded, with instruction to dismiss the proceeding.

The appellant appeals from a decree of the District Court adjudging him guilty of contempt of that court in violating its prior decree rendered on December 10, 1901, in a suit brought by the appellee the Pacific Live Stock Company, a corporation, against the appellant herein, and other defendants, to determine the rights of the parties to the suit to the use of the waters of the Silvies river and the forks thereof. At the time of the commencement of the suit, and the decree therein, the appellant owned sections 21, 23, 27, 25, and 35, the W. ½ of 26, and nearly all of 22, in township 23 south, range 31 east, and said land was irrigated by the waters of the east fork of Silvies river. He owned no land on the west fork of that river, and had no interest in the water of that fork, except that he held section 31 under a lease from Charles Altschul. Altschul was not a party to the suit. The bill of complaint brought in question the rights of the appellant as to his dams and ditch systems on the east fork of the river, but it made no mention of section 31 on the west fork, and it called upon the appellant to make disclosure only of his rights and claims as to the waters of the east fork. He answered the bill, and set up the rights which he claimed to those waters. He made no mention of his right as lessee of section 31. The decree, which was entered upon the stipulation of the parties, gave to the appellant: First, the right to maintain his upper dam on the east fork of Silvies river in section 21, and his ditches leading therefrom, "as the same are now constructed and built, from the 5th day of May each year until the 1st day of July each year," and to divert so much of the water thereof as may be necessary to irrigate the said sections of land which he owned on and adjacent to the east fork; second, it provided that he might maintain his drain ditch on the south half of section 27, but commanded that he maintain it only for the purpose of draining water from the surface of his land, and not for irrigation; third, it decreed that the appellant be perpetually enjoined from diverting "any of the waters of Silvies river, and any of the water from the east fork of Silvies river, and any of the water from the west fork of Silvies river, from the channels of said

rivers, and from the channels of each of said rivers," and from impeding the flow of any of said waters to and upon the lands of the complainant, and the appellant was required to remove all dams which he then had in the channels of Silvies river or in the channels of the east fork or in the channels of the west fork save and except as permitted in the decree. Subsequent to the decree, the lands of the appellant were transferred to a corporation known as the William Hanley Company, and that company purchased, not from the appellant, but from the owner, the Altschul Section 31 on the west fork.

On April 29, 1915, the superintendent of the appellee herein filed in the court below an affidavit, charging the appellant with violations of the decree. It first accused him of various acts injurious to the rights of the appellee, in conspiring with and inducing others to violate the terms of the decree. All those charges were found by the court below to be without foundation, but the court found the appellant guilty of contempt, in that he used the dam in section 31 on the west fork, thereby diverting water from that fork; second, that he maintained a dam known as the Young dam on section 19 on the west fork of said river, for the purpose of irrigating sections 29 and 5; third, that he operated his drain ditch on section 29 on the east fork at times when it was not necessary to drain the surface of his land; fourth, that he obstructed the flow of the river through his dam in section 21 on the east fork by permitting one board and some brush to remain in the dam; fifth, that he failed to repair the breaks in the bank of the east fork in section 27.

C. E. S. Wood, Lionel R. Webster, and Erskine Wood, all of Portland, Or. (M. M. Matthiesen, of Portland, Or., on the brief), for appellant.

Edward F. Treadwell, of San Francisco, Cal., and Wirt Minor, of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellee moves to dismiss the appeal on the ground that the order adjudging the appellant guilty of contempt, being punitive and not compensatory, cannot be reviewed in this court by appeal, but must be brought here by writ of error. We find no merit in the motion. The judgment is not primarily punitive in its nature, but it is a judgment in a civil and remedial proceeding, instituted to protect and enforce private rights, and to that end to compel obedience of the decree of the court. It is brought for the violation of the injunction of a final decree, and under all the decisions it is properly reviewable on appeal. Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853; Heller v. National Waistband Co., 168 Fed. 249, 93 C. C. A. 551; Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897.

[2-4] We are unable to see that the rights of the appellant as lessee of Altschul of section 31 on the west fork were in any way involved in the original suit. The appellant's dams and ditches on the east fork were all described in the bill. The complainant must have known of the existence of the dam in section 31 on the west fork, and that the property was claimed by Altschul. For some reason not disclosed by the complainant, Altschul was omitted from the litigation. His right to maintain the dam and use the water was left unaffected by the decree. After the conclusion of that litigation, as before, Alt-

schul was free to sell or lease his right to the appellant or to any one. But it is said that the appellant is estopped by that decree as to all water rights in section 31, by the fact that the bill called upon him to make full disclosure of all his rights at all places on the river or its forks. But the bill was not so broad in its scope. It called upon the appellant to make full disclosure and discovery of his rights "for diverting the water from your orator's said land, and obstructing its flow therein, as is hereinabove charged," and to make answer "to the matters hereinabove stated and charged." The matters so stated and charged were confined, so far as the appellant was concerned, to his rights on the east fork of the river. He was not charged with diverting the water of the west fork. The provision of the decree which enjoined him from diverting or impeding the flow of waters in the west fork must be interpreted in the light of the issues in the case. If the complainant in that suit omitted to bring in Altschul as a party defendant, or to put in issue Altschul's rights to the water, and took a decree without determining those rights, he cannot complain that another to whom Altschul has transferred his rights continues to exercise them as Altschul might have exercised them both before and after the decree, and it can make no difference in the present case whether the appellant or another acquired those rights. Josslyn v. Daly, 15 Idaho, 137, 96 Pac. 568. The appellee cites State ex rel. Stevens v. Catlin, 21 Wash. 423, 58 Pac. 206, in which the court held that where a decree of a court has adjudicated all the rights of the parties before it to the waters of a certain stream, and enjoined a party from using more than a certain quantity, he is guilty of contempt if he uses more water than he is allowed to use under the terms of the decree when he asserts title under a deed from one who was not a party to the decree, but fails to show any right in his grantor. It is said that the decision is applicable here for the reason that the appellant shows no actual right in Altschul or any predecessor in interest to use the water. The distinction to be observed between the case so cited and the case at bar is that the judgment in the former was premised upon a decree "by the terms of which all of the rights to the waters of the stream were adjudicated and determined." In the present case it affirmatively appears that the rights of the owners of the Altschul lands to the use of the water of the west fork were not adjudicated.

[5] Nor do we see that the appellant's right to the use of the dam in section 31 is affected by the provision of the decree which limits and defines Caspar Luig's right to the use of that dam. That decree went no further than to define the status and to limit the use of that dam as to Caspar Luig. The bill alleged that he had a dam, and the decree provided that he might maintain it from the 15th day of May to the 1st day of July each year "in the manner and form as the same is now constructed," for the purpose of irrigating his lands in section 6, a section which lay directly south of 31. The decree affects only the rights of Luig, and his successors in interest. It has no relation to the right of the appellant.

[6, 7] As to the appellant's contempt in maintaining the Young dam

on the west fork, the facts are as follows: In the original decree Young, who was a party to the suit, was allowed to maintain his dam on the west fork for the irrigation of his land in the northeast quarter of section 30. In 1907 his dam was washed out, and thereafter he and the appellant together built a new dam a short distance up the stream from the site of the old dam, and very near the section line between sections 19 and 30. The intention was that Young should use this dam in the place of his old one; that the William Hanley Company should use it for the irrigation of section 29, which lies directly east of 30, and for the irrigation of section 19, which belongs to the Harney Valley Improvement Company, of which the appellant is a stockholder. In 1912, at the instance of the appellee herein, Young was held in contempt on account of his use of the new dam. Thereafter he ceased using any water from that dam, and the William Hanley Company purposed to use it for the irrigation of sections 29 and 19. At the time of the original suit, those sections were a portion of the Altschul land, and neither those lands nor the question of the right to irrigate the same from the water of the west fork were involved in the suit, further than that Levens, who then held a lease of section 19, was decreed the right to water that section during the term of his lease. The charge against the appellant with reference to the Young dam as made in the affidavit for the present contempt proceedings is that he encouraged Young and two others to build the dam, and to divert water thereby in the year 1915. That charge was not sustained. The appellant answered it, and claimed that the ownership of the dam was in the William Hanley Company and the Harney Valley Improvement Company. The court below held that the appellant violated the decree when he attempted to use any water through the Young dam, held him in contempt therefor, and enjoined him from further using the dam. The appellant's claim to the right to use the Young dam was based wholly on his contention that Altschul had the right to irrigate sections 29 and 19, and that his right to the water therefor had not been involved or determined in the original suit; that the William Hanley Company and the Harney Valley Improvement Company stood in Altschul's shoes, and that neither of those corporations nor the appellant claimed any authority to divert the water through the Young dam by virtue of that portion of the decree which established Young's right therein, but that they claimed it as an original right appurtenant to the Altschul lands. If the right of the owner of those two sections of land was involved in and determined by the original suit, and it was determined that the owner thereof had no right to divert water from Silvies river for their irrigation, then necessarily it follows that the corporations which acquired those sections from the owner have no such right, and the appellant is guilty of contempt if, as manager of those corporations, he has exercised rights which were denied to the former owner of the land.

But it does not follow from the fact that the court adjudicated the respective rights of all the parties to that litigation that others who were not parties to the suit have no right to use the waters of the Silvies river for irrigation. It is evident that Altschul, if he were

still the owner of sections 29 and 19, and he had constructed this dam and ditch for the irrigation thereof, could not be held in contempt for violation of the terms of the decree, since neither he nor his lands were bound by the decree. It follows, of course, that Altschul's successor in interest cannot be held for contempt for those acts. It may be that Altschul never had the right to irrigate those lands, and that his successors in interest have no such right, but that is a question which, as we have seen, must be determined in an original suit. It cannot be tried in the present contempt proceeding. Hamlin v. New York, etc., Railroad, 170 Mass. 548, 49 N. E. 922; Baldwin v. Circuit Judge, 101 Mich. 119, 135, 59 N. W. 432, 25 L. R. A. 739; Ex parte Hollis, 59 Cal. 405; California Paving Co. v. Molitor, 113 U. S. 609, 5 Sup. Ct. 618, 28 L. Ed. 1106; Rogers Manufacturing Co. v. Rogers, 38 Conn. 121; Castleman v. State, 94 Miss. 609, 47 South. 647; In the Matter of Day, 34 Wis. 638. It appears from the record that the rights of all persons on the Silvies river are now in process of determination in a court of the state of Oregon, under the provisions of the law of that state known as the Water Code. To that tribunal and to the provisions of that Code, all questions of original rights raised in these proceedings for contempt should be relegated.

[8] The court below found the appellant in contempt for using his drain ditch in violation of the decree. The charge was that the appellant, during March and April, at a time when it was unnecessary to drain water from the surface of his land, had the head of his drain ditch open, and used the same for the purpose of irrigation. The appellant pleaded the necessity for opening the drain ditch to rid his land of flood waters. The court below did not find that the appellant had used the drain ditch for the purpose of irrigation, and did not find that he had violated the express provisions of the decree as the same were construed in the decisions of this court in Pacific Live Stock Co. v. Hanley, 200 Fed. 468, 484, 118 C. C. A. 494, 510, where it was said that the appellant had no right—

"to divert any water from the river when its waters are not so high as to make it necessary or proper by means of the drain ditch to drain surface water from the lands."

But the court below reached the conclusion that the appellant had allowed the ditch to remain open, contrary to the spirit of the decree, for the reason that the appellant was responsible for the overflow of his own lands. The court said: "He should have kept the breaks and gaps in the banks of the stream closed." To that as a legal conclusion we cannot assent. The only limitation placed upon the appellant's right to use the drain ditch by the terms of the decree is that he shall use it only for the purpose of draining water from the surface of his land, and not for irrigation. The evidence does not show that the presence of the water which made it necessary to use the drain ditch in order to relieve the appellant's land was caused by the appellant's own acts further than that through dam 21 water may have come upon the appellant's land, which was thereafter drained from the surface thereof through the drain ditch. If so, the water came through the Hanley upper ditch, strictly in accordance with the provi-

sions of the decree, and it was drained from the surface of the appellant's lands through the drain ditch likewise in accordance with the provisions of the decree. There is nothing in the case to show that the appellant purposely flooded his land in order that he might have an excuse for opening his drain ditch. There is no evidence that he used the ditch for irrigation. The original complaint was brought by the appellee as proprietor of lands on the river below the lands of the defendants in the suit, and the burden of its complaint was that the defendants had obstructed the natural flow of the water to the complainant's lands. Its prayer was that they be compelled to take out their dams and refrain from diverting or impeding the flow of the water—

"down to and upon your orator's said lands as said water has heretofore been wont to flow therein when not interfered with by the defendants.".

The decree defined the rights of each of the defendants to obstruct the flow or diversion of water, and it provided that:

"Except as thus permitted, the defendants are perpetually enjoined and restrained * * * from impeding the flow of any of said water to and upon the lands of the complainant hereinbefore described, as said water has heretofore been wont to flow thereon when not interfered with by the defendants."

In view of the history of the river, and the evidence of the overflow of its waters through depressions in the bank from time immemorial, the appellant cannot be held in contempt for permitting the water of the river to flow as it was wont to flow, or from draining his land by the drain ditch when it needed draining, so long as he did not use the ditch for irrigation.

[9] As to the appellant's contempt, as found by the court below, in permitting cuts in the river bank of the east fork of the river, whereby water was diverted from the stream, the record shows the following: The original decree enjoined the appellant from obstructing the channel of the east fork of Silvies river prior to May 5th of each year, and from diverting any water therefrom except such as would naturally flow through his ditches at the 21 dam. The affidavit which charges contempt alleges that the appellant diverted the water by means of cuts in the bank of the river on his land in section 27. The appellant's answer was that the cuts were natural depressions in the bank, not created or permitted by him, and he testified that he had endeavored to the best of his ability to mend such breaks and prevent the outflow of the water through the same. The record shows the fact to be that the banks of the east fork as that stream flows through sections 27 and 34 are higher than the adjacent land, and that in times of flood water has always poured through certain natural depressions in the bank, with the result that the openings in the bank have there been cut deeper, until gaps were made through which the water flowed in considerable quantities. The court below, while not finding that Hanley had made or permitted others to make such openings in the banks, held that he was in contempt, in that he had failed to close the same. The court said:

"He should have kept these breaks and gaps in the banks of the stream closed, or at least in very large measure. The just implications of the decree

234 F.—34

require this of him. He is only given the flood waters to May 5th, and waters pouring through rents in the bank cannot be termed 'flood waters.' "

In the original decree no mention whatever was made of these breaks in the bank, although the evidence now is that they had existed long prior thereto. The decree by its terms provided:

"If at any time, and while the dam of the said W. D. Hanley is open, so that it does not obstruct the flow of the water in said river, and from natural causes the waters of the said east fork of Silvies river shall overflow its banks upon the land of the said W. D. Hanley, or naturally run through either of the ditches of the said W. D. Hanley leading from the dam of the said W. D. Hanley first above described, said defendant W. D. Hanley shall have the use and enjoyment of so much of the said water of said river as may come upon his land in the manner aforesaid, and during such times as the same may run thereon from natural causes, and without any obstruction of the channel of said river."

Assuming, as it was found by the court below, as and as the evidence clearly shows, that the breaks in the bank were natural depressions, and that water flowing therethrough ran upon the appellant's land "from natural causes," and that the appellant was not by the decree required to prevent or obstruct the same, we are unable to see how, as a matter of law, he can be justly held in contempt for the situation as it exists during the overflow of water through depressions in the bank, the evidence being clear that the appellant did no act to induce such overflow, but, on the contrary, with a view to protect the appellee, and to prevent friction and litigation, diligently endeavored to close the gaps, and to prevent such overflow.

[10, 11] The appellant was found in contempt, in that in March and April, 1915, he maintained a small board a portion of the way across the 21 dam, and permitted brush and débris to accumulate above the dam so as to obstruct the flow of the water and raise it, and thereby he diverted water into his upper ditch. The 21 dam is a dam across the whole channel of the river, and it is used to divert water into the appellant's ditches, one on either side of the east fork. The total width of the dam is 16 feet, and it has four openings. When the boards are removed the water flows through all the openings. The decree allowed the appellant to close the dam and divert water from the river into his two ditches from May 5th to July 1st each year, and to take any water at any time of the year that naturally flowed into his ditches while his dam was open so as not to obstruct the flow of the river. The evidence as to the obstruction of the dam is that in April, 1915, one board 4 feet long and 6 inches wide was found across one of the openings of the dam, and that some willow brush had lodged against the posts of the dam. There is no evidence that any one placed these obstructions in the dam, or that the appellant knew that they were there. On the contrary, the evidence indicates that he knew nothing whatever of their presence. Some of the willow brush bore marks of having been cut with a hatchet, and it is not improbable that it was cut and fell into the stream in connection with a survey which the appellee had been making on the upper reaches of the river, and that it floated down and lodged against the posts of the dam. Whether the board floated into the position where it was or had been

carelessly left there when the boards of the dam were removed the year before there is no information. Whether or not the brush caused a perceptible obstruction to the water is uncertain, the evidence being conflicting, but it was shown that the board was on the side of the dam where the water was slack, and that it could not have affected the flow of the water to any appreciable degree.

That there was little or no obstruction from either cause seems to be indicated by the testimony of the appellee's engineer, who testified that he visited the premises at intervals, and found that the dam was obstructed from the first part of April until the 25th of that month. He testified that he made measurements of the water which was diverted into the appellant's upper ditch, the first measurements being on April 3d, and the last on May 3d, and that during the whole of that period the same amount of water was running into that ditch, and that the quantity was nearly 40 second feet. It was not disputed that the obstructions were removed about the 24th or 25th of April. The court below found that if the appellant did not know of the condition of the dam, he ought to have known it, and that he was guilty of inexcusable neglect. The evidence is without dispute that as soon as the appellant received notice that it was claimed that the flow of the water at his upper dam was obstructed, he caused the obstructing brush to be removed, and that this was done by drawing out one of the pieces of willow, whereupon the remainder parted and floated down the stream. Assuming it to be true, as it was found by the court below, that the appellant was negligent in permitting the obstructions to remain in the river for a period of three weeks, we think the conclusion that his negligence was such as to amount to a willful contempt of court is wholly unwarranted in law. Although it has not been held by the Supreme Court that in a procedure of a civil nature such as the one here before us, the defendant is presumed to be innocent and must be proved to be guilty beyond a reasonable doubt (Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 444, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. [N. S.] 874), the trend of all the decisions is that the evidence of contempt must be convincing. In California Paving Co. v. Molitor, 113 U. S. 609, 618, 5 Sup. Ct. 618, 622 (28 L. Ed. 1106), Mr. Justice Bradley said:

"Process of contempt is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct."

In Accumulator Co. v. Consolidated Electric Storage Co. (C. C.) 53 Fed. 793, in a proceeding for contempt for violation of an injunction, the court said:

"This proceeding is criminal in its nature and character, and the same rules should govern as in the trial of indictments. The burden of proof of establishing violation of the injunction is upon the complainant, and the defendants are entitled to the benefit of any reasonable doubt."

So in General Electric Co. v. McLaren (C. C.) 140 Fed. 876, the court held that the burden of proof to establish the violation of an injunction rests upon the complainant, and that the defendant is entitled to the benefit of every reasonable doubt.

This proceeding is one of a series of contempt proceedings that have kept the parties hereto in litigation a large portion of' the time since the original decree was rendered. The situation of the appellee on the river is obviously a difficult one. In dry seasons it suffers for want of water for its stock and for irrigation. It is natural that under the circumstances it should be diligent in protecting its rights. We cannot but feel, however, that in this instance, as in some that have preceded it, it has gone further than justice permitted, and that it has magnified little things beyond their true proportions. The charge which the appellee principally relied upon, and which evidently was the inspiration of the present proceeding, was that the appellant had conspired with Luig, Young, Hotchkiss, Thornberg, Dalton, Hudspeth, and Smith to obstruct and divert the waters of the west fork. That charge wholly failed of proof, and it seems probable that, had the appellee known that its suspicion of conspiracy was unfounded, the other charges would not have been brought. The appellee's attorney practically admitted that but for the necessity of bringing the proceedings on account of the alleged conspiracies to divert the water of the west fork, the breaks in the bank of the east fork would have been overlooked.

The judgment is reversed, and the cause is remanded to the court below, with instruction to dismiss the proceeding.