(127 So. 178)

DOTHAN OIL MILL CO. et al. v. ESPY et al.

4 Div. 458.

Supreme Court of Alabama.

Jan. 23, 1930.

Rehearing Denied March 20, 1930.

Steiner, Crum & Weil, of Montgomery, Pettus & Fuller, of Selma, and Farmer, Merrill & Farmer, of Dothan, for appellants.

T. M. Espy and O. S. Lewis, both of Dothan, and W. O. Mulkey, of Geneva, for appellees.

.BROWN, . J. (after stating the facts as above).

If we assume that the purchase of cotton seed, by the respondents from the producers and others, to be crushed at their respective mills in this state, and manufactured

into cotton seed oil and other by-products, involves acts of interstate commerce, the contention of appellants, that the case made by the bill is one within the exclusive jurisdiction of the Federal Trade Commission and the United States Circuit Court of Appeals, is fully answered by the ruling of the United States Supreme Court in Federal Trade Commission v. Klesner, 280 U. S. 19, 50 S. Ct. 1, 3, 74 L. Ed. ——.

In the cited case the Federal Trade Commission, by order entered, directed Klesner, an interior decorator doing business under the name of Hooper & Klesner, to "cease and desist from using the words 'Shade Shop' standing alone or in conjunction with other words as an identification of the business conducted by him, in any manner of advertisement, signs, stationery, telephone, or business directories, trade lists or otherwise," on the ground that the use of said words was unfair practice, in that it infringed the trade rights of one Sammons who had for many years done business under the name of "The Shade Shop." And applied for the enforcement of this order by the Circuit Court of Appeals of the District of Columbia, wherein its application was dismissed. The Supreme Court reviewed that order on certiorari, and observed: "We need not decide whether the Court of Appeals was justified in all of its assumptions of fact or in its conclusions on matters of law. For we are of opinion that the decree should be affirmed on a preliminary ground which made it unnecessary for that court to inquire into the merits. Section 5 of the Federal Trade Commission Act [15 USCA § 45] does not provide private persons with an administrative remedy for private wrongs. The formal complaint is brought in the Commission's name; the prosecution is wholly that of the government; and it bears the entire expense of the prosecution. A person who deems himself aggrieved by the use of an unfair method of competition is not given the right to institute before the Commission a complaint against the alleged wrongdoer. Nor may the Commission authorize him to do so."

Nor is there anything in the Federal Trade Commission Act that authorizes it to approve and promulgate resolutions, rules and regulations adopted by an aggregation of individuals or corporation in the prosecution of private business. It is "empowered and directed to prevent persons, partnerships, or corporations, except banks, and common carriers subject to the Acts to regulate commerce, from using unfair methods of competition in commerce," 15 USCA § 45; 'and the act provides: "Nor shall anything contained in said subdivision be construed to alter, modify, or repeal the said antitrust Acts or the Acts to regulate commerce or any part or parts thereof." **15 USCA § 51.**

■ We are not of opinion, however, that the business of buying cotton seed, confined wholly to the state, to be crushed and manufactured into oil and other products, in such state, constitutes interstate commerce, within the scope and purpose of said act or within the sense of the Sherman and Clayton Acts (15 USCA §§ 1–7, 15, and sections 12–27, 44) which confer on the federal courts exclusive jurisdiction to enforce said acts, though some of the manufactured products may eventually find their way into and become commodities of interstate commerce. "The fact, of itself, that an article when in the process of manufacture is intended for export to another state does not render it an article of interstate commerce." Crescent Cotton Oil Co. v. State of Mississippi, 257 U. S. 129, 42 S. Ct. 42, 44, 66 L. Ed. 166 ; Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715 ; New York Central R. R. Co. v. Mohney, 252 U. S. 152, 40 S. Ct. 287, 64 L. Ed. 502, 9 A. L. R. 496.

■ Though, under the provisions of section 26, tit. 15, of the United States Code Annotated, a private individual may maintain a suit to enjoin acts interfering with interstate commerce, in a proper case, the acts complained of must be immediately and directly against such commerce. Gable v. Vonnegut Mach. Co. et al. (C. C. A.) 274 F. 66 ; Anderson v. Shipowners' Association of Pacific Coast, 272 U. S. 359, 47 S. Ct. 125, 71 L. Ed. 298.

These observations are sufficient to justify a denial of appellants' contention that, on the case made by the bill, the Federal District Court, only, has jurisdiction to grant the relief prayed. Home Telephone Co. v. Michigan R. R. Commission, 174 Mich. 219, 140 N. W. 496.

■ Taking as true the averments of the bill, as must be done on demurrer, and interpreting the alleged resolutions made Exhibit A to the bill in the light of the facts averred, however inoffensive they may appear on their face, we have no difficulty in reaching the conclusion that the defendants have entered into a combine, pool trust, or confederation, to regulate or fix the price of cotton seed in this state, and are attempting to destroy competition in the sale thereof in violation of the state anti-trust laws. Code 1923, §§ 5212–5214; Southern Cotton Oil Co. v. Knox et als., 202 Ala. 694, 81 So. 656; Arnold v. Jones' Cotton Co., 152 Ala. 501, 44 So. 662, 12 L. R. A. (N. S.) 150; Georgia Fruit Exchange v. Turnipseed, 9 Ala. App. 123, 62 So. 542.

■ This brings us to consider the sufficiency of the bill, as against the general demurrer for want of equity. The rule applicable here, in the absence of pertinent, specific grounds of demurrer, is that apparent amendable defects will be treated as amended, and only

matters of substance will be considered. Code 1923, § 6553; McDuffie et al. v. Lynchburg Shoe Co. et al., 178 Ala. 268, 59 So. 567; House and Lot v. State ex rel. Patterson, 204 Ala. 108, 85 So. 382, 10 A. L. R. 1589; Seeberg v. Norville, 204 Ala. 20, 85 So. 505; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67. In this connection it may be stated that there is no specific ground of demurrer going to the sufficiency of the averments that complainants will suffer irreparable injury.

██ The weight of modern authority sustains the right of one injured in his business or property by a combine, to which he is not a party, formed for the purpose of creating a monopoly, fixing or controlling the prices of commodities in which he deals, in such sort as to stifle competition, contrary to law, to equitable relief by injunction, if the damages he would otherwise suffer are unascertainable, or the injury that would result is irreparable, or the controversy would occasion a multiplicity of suits. Tallassee Oil & Fertilizer Co. et al. v. H. S. & J. L. Holloway, 200 Ala. 492, 76 So. 434, L. R. A. 1918A, 280; Reeves v. Decorah Farmers' Cooperative Society, 160 Iowa, 194, 140 N. W. 844, 14 L. R. A. (N. S.) 1104; 19 R. C. L. 205, § 161, and authorities cited under note 16.

██ The averments of the bill in respect to the result of the alleged combine between the defendants, briefly stated, are that defendants constitute all or practically all of the consumers of cotton seed in this state; that they have entered into a combine to fix the price of this commodity in order that they may purchase at the price so fixed; that a part of the scheme agreed upon is to give publicity to the price they will offer, so that the producers may be advised, and in connection therewith that, as to purchases made by the parties in the combine, they will pay the freight to mill destination, where the quantity and quality are to be ascertained and determined, the seller agreeing to abide by such determination. That the parties to the combine have, not only agreed among themselves to determine the price and give full publicity thereto, but they have agreed to fix the allowances, compensation or profits to be allowed to persons who are engaged in the business of purchasing and selling for profit—that is, they agree to allow to the middleman 50 cents per ton for seed purchased and shipped in carload lots, and $3 per ton for all seed purchased from wagons and gins, this allowance to cover storage, handling. loading, loss in weight, "and all other charges of every kind, *such charges and commissions to be paid by the seller*." And a part of the alleged unlawful combine is "*that the names of such 50 cent buyers be made available to the public*." And the seller in order to dispose of his seed must comply with these rules or provisions, and thereby "respondents create and maintain a fictitious price for cotton-seed" to the great injury and damage of complainants and other producers or dealers in cotton seed. "That if the respondents are permitted to continue to carry out the unlawful conspiracy and combine in this bill set forth, and force complainants to sell their seed to them under the rules and provisions contained in said exhibit 'A,' these complainants will be unable to pay the producers of cotton-seed in the State of Alabama as large a price as they would or could pay, the producers of such cotton-seed but for the alleged conspiracy and methods of doing business by respondents, to the *irreparable damage of complainants* and said producers." That respondents have set up and maintain an "interpretation" or grievous "committee" to prevent a violation of the alleged combine or agreement.

Appellants insist the allegation that the alleged unlawful combine will occasion "irreparable injury" to complainants is a mere conclusion of the pleader, citing, in support thereof, Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 343, 48 So. 477, 24 L. R. A. (N. S.) 399, and National Fireproofing Co. v. Mason Builders' Association et al. (C. C. A.) 169 F. 259, 26 L. R. A. (N. S.) 148.

In the case first above cited, the complainants sought to restrain the defendants as warehousemen from exacting what they alleged to be excessive charges for storing and warehousing cotton for shipment, and rested the equity of the bill on the theory that the alleged wrongful conduct of the defendants would occasion a multiplicity of suits, and would be "practically ruinous to complainants." In considering the "motion to dismiss for want of equity," the court observed that:

"It is true it is alleged in the bill that if complainants submit to and pay the increased charges under the new schedule of rates it will be practically ruinous to complainants. This, however, in the light of the facts contained in the bill, can but be regarded as a conclusion of the pleader, and not as the statement of a fact. The difference in amount produced by the alleged overcharges as shown by the bill is too inconsiderable to warrant the conclusion that ruinous results would follow to a business of the kind and character as that engaged in by the complainants, when it is to be remembered that the overcharges so paid are not a permanent loss, and may be immediately recovered back in an action at law. We are unable to see how or in what way the complainants would suffer irreparable injury and damage from the alleged course of conduct of the respondent.

"It is urged that the complainants would be put to numerous suits at law, and hence the bill has equity upon the doctrine of the prevention of a multiplicity of suits. It cannot be denied but that the complainants

might in one action at law sue to recover all of the overcharges paid for the entire cotton season. One suit or a multiplicity of suits therefore would be a matter of complainants' own election." Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 352, 353, 48 So. 477, 480, 24 L. R. A. (N. S.) 399.

The other case (National Fireproofing Co. v. Mason Builders' Association et al. [C. C. A.] 169 F. 259, 26 L. R. A. [N. S.] 148) involved injuries alleged to have resulted from the violation of the federal anti-trust act, and it was there ruled that the remedy by injunction could not be invoked by an individual, as the act conferred this right on the government only.

The federal case is without application here, and unless it can be said, in the light of the facts averred in the bill, that the averments that complainants will suffer irreparable injury are a mere conclusion unsupported by the other averments of the bill, the holding in Gulf Compress Co. v. Harris, Cortner & Co., supra, is not controlling.

We are of opinion that it is reasonably clear from the facts averred that the dominant purpose of the alleged combine is to stifle competition to such extent that ginners and dealers in complainants' class will be forced out of the field of competition, leaving the field clear to a favored class, who purchase for defendants in carload lots and who can continue in business on the 50 cents per ton commissions.

In the face of the facts averred, and admitted to be true by the demurrer, it cannot be assumed that the producers will sell to the ginner or small dealer at a price which will allow such dealer to make a commission of $3 per ton, when they can sell direct to the buyers for the mills on a basis of 50 cents commission, and have the freight paid by the mills to their destinations, where the weight and quality are to be determined.

On the other hand, it requires no argument to show that the ginner and small dealer cannot pay the price fixed by the mills and sell at the same price and continue to do business; nor can such small dealer and ginner in the face of such competition continue in business by paying the price fixed by the mills, and sell to the favored class of commission buyers and pay the commission of 50 cents per ton.

We are, therefore, not of opinion that the averment of the bill that the alleged damages "are irreparable" is wholly unsupported by the other averments of the bill and is a mere conclusion of the pleader.

█ It is a matter of judicial knowledge that the business of ginning cotton is a business affected with a public interest, and is an essential element of the great cotton industry in this state. Tallassee Oil & Fertilizer Co.

et al. v. Holloway, supra. And we feel safe in holding that any unlawful combine that tends to hamper and destroy the business of the ginner justifies the interference of a court of equity, at the insistence of the party injured, if, under the rules of evidence applicable to an action for damages, he would not be able to prove his damages.

If the complainants were forced to resort to an action for damages, they would be compelled to rely on showing the loss of *prospective profits* arising, not from mere personal effort, but from the employment of both capital and labor in the conduct of their business, and the weight of authority is against the recovery of such damages. Beck v. West & Co., 87 Ala. 213, 6 So. 70; Central of Ga. Rwy. Co. v. Weaver, 194 Ala. 46, 69 So. 521; Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74; Millican v. Haynes, 212 Ala. 539, 103 So. 564; Extensive notes 9 A. L. R. 510, 27 A. L. R. 430.

This view would render the damages "unascertainable," bringing the case within the rule sustaining the right of the injured party to equitable relief.

█ The insistence of appellants, that the complainants, not being parties to the alleged unlawful agreement, are without right to complain, citing Lovejoy v. Bessemer Waterworks, 146 Ala. 374, 41 So. 76, 6 L. R. A. (N. S.) 429, 9 Ann. Cas. 1068, and 9 Cyc. 380, is without merit and is not sustained by these authorities. The rule to the contrary is that one in pari delicto cannot invoke the aid of equity to relieve himself from a situation into which he has brought himself. Employing Printers' Club et al. v. Doctor Blosser Co., 122 Ga. 509, 50 S. E. 353, 69 L. R. A. 90, 106 Am. St. Rep. 137, 2 Ann. Cas. 694.

We are in agreement with the principles announced in Doremus v. Hennessy, 176 Ill. 608, 52 N. E. 924, 926, 54 N. E. 524, 43 L. R. A. 797, 802, 68 Am. St. Rep. 203, 207, that "lawful competition that may injure the business of another, even though successfully directed to driving that other out of business, is not actionable"; this is the general rule. 9 R. C. L. 146, § 111.

█ On the other hand, the authorities are generally agreed that one who deals in any commodity and sells in the market has the same right to competition among buyers as the purchaser has to competition among sellers. While purchasers in competition with each other have the right to fix the price they will pay, yet it is unlawful for all of the buyers to combine for the purpose of stifling competition and fix the price of a commodity to the hurt of others. This is not lawful competition. Code 1923, §§ 5212–5214; Arnold & Co. v. Jones' Cotton Co., 152 Ala. 501, 44 So. 662, 12 L. R. A. (N. S.) 150; 19 R. C. L. 137, § 103.

We are of opinion that the decree overruling the demurrers is free from error, and is due to be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

On Rehearing.

BROWN, J.

The appellants have renewed their contention, on rehearing, that in as much as the injunction bond is signed only by the appellees—there being no sureties thereon—the injunction is void.

■ This appeal, as stated in the original opinion, is from a decree overruling the defendants' demurrers to the bill, and the question of the sufficiency of the injunction bond is in no way presented. This is a sufficient answer to the contention; but to show that it is without merit, if the question was presented, we quote from the opinion of this court in Jones v. Ewing et al., 56 Ala. 360, speaking through Brickell, C. J.: "The irregularity for which the chancellor dissolved the injunction, was the failure of the judge ordering the issue of the writ to require the complainant to execute a bond, with surety, for the payment of damages if the injunction was dissolved. R. C. § 3480. If it is conceded the order was for this reason irregular, it is voidable only, not void. The circuit judge had full authority to grant it, and the order was binding and conclusive, until on a proper application it was vacated. People v. Sturtevant, 9 N. Y. 266, 59 Am. Dec. 536." To the same effect, 32 C. J. 401, § 678.

True, the Mississippi cases—Morris v. Trussell, 144 Miss. 343, 109 So. 854, and Castleman et al. v. State, 94 Miss. 609, 47 So. 647, construing and applying the statutes of that state—are to the contrary, but they are in conflict with Jones v. Ewing et al., supra, construing our statute more than a half century ago, and the statute has been repeatedly readopted, without change. Barnewell v. Murrell, 108 Ala. 366, 18 So. 831.

We have stated the averments of the bill and their legal effect, giving emphasis to the statement in the resolutions, *"to the end that discrimination in prices may be prevented."* From this it is clear that some such thoughts as fixing prices were in mind, and, when the resolutions are taken in the light of the affirmative and positive averment that such agreement or combination was entered into, as we have held, they are sufficient as against the demurrers to give the bill equity.

The assertion of appellants in their brief on application for rehearing, that there is an absence of averment in the bill that the appellants are operating under the alleged combine or trust agreement, is fully answered by the statement of the case preceding the original opinion.

Moreover, this assertion is inconsistent with the further assertion that appellants have been "ruined" by the issuance of the injunction.

If, in fact, appellants are not operating their respective businesses in pursuance of the alleged combine or trust, or if in fact there is no such trust or combine, then the injunction in no way affects them in the conduct of their businesses. There is nothing in the injunction to restrain the defendants, each acting upon its own judgment without unlawful combine or agreement, from pursuing its own course in respect to its own particular business, and when it does no one can complain.

We are of opinion that the application should be overruled, and it is so ordered.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.