CRESCENT COTTON OIL COMPANY *v.* STATE OF MISSISSIPPI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 41.  Argued October 17, 1921.—Decided November 14, 1921.

Plaintiff in error, a Tennessee corporation, engaged in the manufacture of cotton-seed oil in that State, finding it impracticable to carry on the business successfully when purchasing its supply of cotton seed from ginners or from brokers, acquired and operated cotton gins in Mississippi and other States, where it ginned cotton for cotton growers, purchased from them the seed thus separated from the fiber and then shipped it to its Tennessee factory. Mississippi passed a law forbidding corporations interested in the manufacture of cotton-seed oil from owning or operating cotton gins, except of a prescribed capacity and in the city or town where their oil plants were located.

*Held:* (1) That, since the ginning was merely manufacture, and the seeds were not in interstate commerce until purchased and com-

mitted to a carrier, the gins were not instrumentalities of interstate commerce and the prohibition of their operation did not infringe the company's rights under the commerce clause. P. 135.

(2) That the prohibition did not deny to the company the equal protection of the laws in applying to corporations and not to individuals, because the inherent difference between corporations and natural persons sustained the classification and because it might be assumed, in the absence of any contrary showing, that only corporations were engaged in operating both oil mills and cotton gins when the act was passed. P. 137.

121 Miss. 615, affirmed.

Error to a decree of the Supreme Court of Mississippi, in a suit by the State, imposing a penalty on the plaintiff in error, forfeiting its right to do local business, enjoining it from operating its cotton gins and requiring it to dispose of them within a prescribed time.

*Mr. J. B. Harris,* with whom *Mr. Thos. A. Evans* and *Mr. A. W. Shands* were on the brief, for plaintiff in error.

The Act of June 18, 1910, amending the Interstate Commerce Act, extended the conception of transportation, so that it does not await actual delivery of goods to a carrier. This has a bearing on the present case.

If the State could not impose a tax upon a local business carried on in connection with interstate commerce, and make the payment of that tax or the filing of statements a condition to the carrying on of the local business, (*Pullman Co.* v. *Kansas,* 216 U. S. 86; *Western Union Telegraph Co.* v. *Taggart,* 163 U. S. 1; *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. 146; *Harrison* v. *St. Louis & San Francisco R. R. Co.,* 232 U. S. 318; *International Textbook Co.* v. *Pigg,* 217 U. S. 91; *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor,* 223 U. S. 280; *Looney* v. *Crane Co.,* 245 U. S. 178), manifestly it could not under any guise prevent the carrying on of the local business in this case.

It is conceded that the oil company was in the State for no other purpose than for acquiring cotton seed to be shipped in interstate commerce; and that the operation of

the gin had become absolutely necessary to enable it to carry on its business with success. It is found as a matter of fact that the operation of the gin was a mere feeder to its oil mill in Tennessee; that the cotton seeds were actually purchased in the lint before they were put through the process of ginning and that it was necessary to separate them in order that they might be shipped, and when separated they were blown into the seed house and immediately shipped into Tennessee.

We are insisting here that the local business of ginning, which had been established long prior to the passage of the Act of 1914, had become a necessary agency or corporate facility and instrumentality in carrying on interstate commerce. Therefore, the act as applied to the oil company, being destructive of its interstate commerce, was a violation of the commerce clause of the Constitution.

The state court based its decision upon *Kidd* v. *Pearson*, 128 U. S. 1, and *Hammer* v. *Dagenhart*, 247 U. S. 251. In those cases the court was dealing with the particular state of facts presented. The manufacturing of liquor in the one case and of cotton goods in the other was the dominant business, the purpose for which the distillery and the cotton mill were established. The interstate commerce was merely incidental. In the case at bar, the interstate commerce was the dominant business, the business for the carrying on of which the oil company had entered the State of Mississippi. The ginning was merely incidental to this business, a necessary instrumentality for carrying it on.

There is no question here about any mere intention in reference to the interstate commerce. The oil company was doing no other business in Mississippi.

The act provides that oil mills may operate ginneries located in the town where the oil mill is located. This is

6267°—22——14

a discrimination against the plaintiff in error and all oil companies whose oil plants are located outside of the State.

The discrimination between corporations and individuals engaging in the same business violates the Fourteenth Amendment. There is no essential difference in the business of operating oil mills and gins by individuals and the same business carried on by corporations. There must be a substantial difference in the business to warrant classification and imposition of burdens upon one class and not upon another class of persons or corporations.

Whether the power exercised is sought to be justified upon the exercise of the police power or under the reserved power to alter, amend and repeal charters or under the general powers in the State to regulate corporations and businesses affected by the public interest, the power must be reasonably exercised. It must be necessary for the protection of the public, and, if a classification, must not be arbitrary but based upon some natural difference which bears a proper and just relation to the classification sought to be made.

*Mr. Frank Roberson,* Attorney General of the State of Mississippi, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

An act of the Legislature of Mississippi, approved March 28, 1914, (designated in the record the "Anti-Gin Act"), prohibits corporations, whether organized under the laws of that State or authorized under the laws thereof to do any local business therein, among other things, from owning or operating any cotton gin, when such corporation is interested in the manufacture of cotton seed oil or cotton seed meal. A penalty is provided for violation of the act, but corporations are permitted to operate their gins for a reasonable time until they may be sold. A pro-

viso permits cotton seed oil companies to operate gins of a prescribed capacity, but only in the city or town where their oil plants are located. Mississippi Laws 1914, c. 162; § 4752, *et seq.* Hemingway's Code, 1917.

The plaintiff in error, a corporation organized under Tennessee Laws, prior to 1914 owned and operated a cotton seed oil mill at Memphis in that State, and two cotton gins in Mississippi. Disregarding the Anti-Gin Act, it continued to operate its two gins in Mississippi until October, 1915, when, for the purpose of enforcing the law, the State, on the relation of its Attorney General, instituted a suit in equity against the company in a county court of chancery, which, after various vicissitudes, resulted in a decree that the act was constitutional, and that the plaintiff in error was guilty of violating it. A penalty was imposed upon the company, its right to do intrastate or local business in Mississippi was declared forfeited, it was perpetually enjoined from operating cotton gins in the State, and it was ordered that, within ninety days, the company should dispose of the two cotton gins which it owned and operated in Mississippi. The company was also found guilty of violating the Anti-Trust law of the State and a penalty therefor was imposed.

This is a proceeding in error to review the decree of the Supreme Court of Mississippi affirming that decree of the county court as to the Anti-Gin Act. The holding that the Anti-Trust laws were violated was reversed by the Supreme Court.

Without proof of it in the record, the case is argued upon the assumption that the statute assailed was enacted in aid of the Anti-Trust laws of the State, under the conviction on the part of the legislature that it was the practice of corporations operating oil mills and cotton gins to depress the price of ginning, regardless of cost, until local competition was suppressed, or brought to terms, and then to charge excessive prices for ginning and to pay

unfairly low prices for seed. There is evidence in the record tending to show resort to such methods by the plaintiff in error.

It clearly appears that in practice it is an advantage to the purchaser of cotton seed to operate gins, not only for the profit that may be made from them directly, but because the grower of cotton often prefers to sell his seed to the company ginning it rather than carry it to another purchaser. It is also in evidence that individuals, as well as corporations, owned and operated gins and that other oil companies than the plaintiff in error obtained their supplies of seed from growers, from gin owners and from brokers.

The plaintiff in error has heretofore relied, and here relies, for its defense, upon the unconstitutionality of the Anti-Gin Act, which it asserts upon two grounds, viz: first, that, as applied to the plaintiff in error, it imposes a direct and substantial, and therefore an unconstitutional, burden upon an instrumentality of interstate commerce; and, second, mildly, that, the act being applicable to corporations and not to individuals owning and operating cotton gins, it denies to the plaintiff in error the equal protection of the laws and therefore offends against the Constitution of the United States.

The basis of the first contention is the claim that it had become impracticable for the oil company to carry on its oil manufacturing business successfully when purchasing its cotton seed supply from other ginners or from brokers, that for this reason the company acquired its two cotton gins in Mississippi, and nine in other States, to obtain the advantage of purchasing seed direct from the growers of cotton, and that all of the cotton seed which it had purchased in connection with its gins was shipped in interstate commerce to its oil mill at Memphis, the gins being, in effect, " feeders " to its oil mill.

These facts, not disputed in the record, it is argued, constitute the gins an essential means and instrumentality of

interstate commerce and that therefore the act imposes a direct and unconstitutional burden on commerce between the States in violation of § 8 of Article I of the Constitution of the United States.

*Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. 146; and *Harrison* v. *St. Louis & San Francisco R. R. Co.,* 232 U. S. 318, are relied upon to sustain this contention of the plaintiff in error. In the first two of the cases cited an attempt was made by the State of Kansas to tax interstate carriers on the basis of all of their property, wherever situated, as measured by the capital stock of the companies. In the third case a similar attempt was made by the State of Arkansas.

There was no question in any of these cases but that the principal business of the companies challenging the taxing law was interstate in character and that their chief investment was in property used in and necessary to the conduct of their interstate commerce. The controversy in the cases was as to the incidence of the tax,—whether it was so imposed upon the property of the companies or the stock representing it, as to constitute a direct and substantial burden upon the interstate commerce in which they were engaged.

It is clear that these decisions cannot be of aid in determining the question we are now considering, which is, whether a cotton gin operated by an oil company in Mississippi is rendered an instrumentality of interstate commerce by the fact that the owner of it ships out of the State, for its use in another State, all of the cotton seed which may be purchased in connection with its ginning operations.

The fourth case relied upon, *Harrison* v. *St. Louis & San Francisco R. R. Co.,* 232 U. S. 318, was an attempt on the part of a State to prevent removal of causes from state to United States courts and is, if possible, yet more inapposite.

The separation of the seed from the fiber of the cotton which is accomplished by the use of the cotton gin, is a short but important step in the manufacture of both the seed and the fiber into useful articles of commerce, but that manufacture is not commerce was held in *Kidd* v. *Pearson,* 128 U. S. 1, 20, 21; *United States* v. *E. C. Knight Co.,* 156 U. S. 1, 12, 13; *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 245; *McCluskey* v. *Marysville & Northern Ry. Co.,* 243 U. S. 36, 38; *Hammer* v. *Dagenhart,* 247 U. S. 251, 252; and in *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 151, 152. And the fact, of itself, that an article when in the process of manufacture is intended for export to another State does not render it an article of interstate commerce. *Coe* v. *Errol,* 116 U. S. 517, and *New York Central R. R. Co.* v. *Mohney,* 252 U. S. 152, 155. When the ginning is completed the operator of the gin is free to purchase the seed or not, and if it is purchased to store it in Mississippi indefinitely, or to sell or use it in that State or to ship it out of the State for use in another, and, under the cases cited, it is only in this last case and after the seed has been committed to a carrier for interstate transport that it passes from the regulatory power of the State into interstate commerce and under the national power.

The application of these conclusions of law to the manufacturing operations of the cotton gins, which we have seen precede but are not a part of interstate commerce, renders it quite impossible to consider them an instrumentality of such commerce, which is burdened by the Anti-Gin Act, and the first contention of the plaintiff in error must be denied.

There remains the second contention, that the Anti-Gin Act denies to plaintiff in error the equal protection of the laws, because it applies to corporations and not to individuals.

Where, as we have found in this case, a foreign corporation has no federal right to continue to do business in a State, and where, as here, no contract right is involved and there is no employment by the Federal Government, it is the settled law that a State may impose conditions, in its discretion, upon the right of such a corporation to do business within the State, even to the extent of excluding it altogether. *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 83, and cases cited. And in such case the inherent difference between corporations and natural persons is sufficient to sustain a classification making restrictions applicable to corporations only. *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 343, 344; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 83. And see *Fort Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532, 533; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Williams* v. *Fears,* 179 U. S. 270, 276; *W. W. Cargill Co.* v. *Minnesota,* 180 U. S. 452.

This would be sufficient to dispose of this second contention, but we may add that the law assailed was enacted by the State in the exercise of its police power, to prevent a practice conceived to be promotive of monopoly with its attendant evils. It is clearly settled that any classification adopted by a State in the exercise of this power which has a reasonable basis, and is therefore not arbitrary, will be sustained against an attack based upon the equal protection of the laws clause of the Fourteenth Amendment, and also that every state of facts sufficient to sustain such classification which can be reasonably conceived of as having existed when the law was enacted will be assumed. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, and cases cited; *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342.

The record before us shows that, before the law assailed was enacted, cotton gins had been operated in Mississippi by individuals as well as by corporations, but there is no showing that oil mills and cotton gins were both operated by an individual or by groups of individuals, and we think it may well be assumed, under the rule stated, that because of the larger capital required, and perhaps for other reasons, oil mills and cotton gins may have been operated in that State, only by corporations, and that for this reason the restraint of the evil aimed at by the act of the legislature could be accomplished by controlling corporations only. Assuming this to be the fact when the law was enacted, obviously the classification objected to can not be pronounced so without reasonable basis as to be arbitrary.

A number of minor contentions are discussed in the briefs. These have all been considered, but are found to be not of sufficient substance to deserve special discussion.

It results that the judgment of the Supreme Court of Mississippi will be

*Affirmed.*