**EASTERN AIR TRANSPORT, Inc., v. SOUTH CAROLINA TAX COMMISSION et al.**

District Court, E. D. South Carolina.

Sept. 3, 1931.

Cuthell, White, Hotchkiss & Mills, of Washington, D. C., and Benet, Shand & McGowan, of Columbia, S. C., for complainant.

J. Fraser Lyon, of Columbia, S. C., for defendant.

Before PARKER, Circuit Judge, and ERNEST F. COCHRAN and GLENN, District Judges.

PARKER, Circuit Judge.

This is a suit to restrain the collection of the South Carolina gasoline tax with respect to gasoline sold to complainant, Eastern Air Transport, Inc., on the ground that as to such gasoline the tax imposes a burden upon interstate commerce in violation of the Commerce Clause of the Constitution of the United States. Const. art. 1, § 8, cl. 3. An interlocutory injunction restraining the collection of the tax is asked; and a court of three judges has been convened pursuant to section 266 of the Judicial Code (28 USCA § 380).

Complainant is a Delaware corporation operating air transport lines in interstate commerce across the state of South Carolina. Its planes stop at Greenville, Spartanburg, Florence, and Charleston in that state, but do not carry freight or passengers between these cities, practically its entire business in South Carolina being interstate in character. At these points, however, it purchases gasoline from the Standard Oil Company for the use of its planes; and that company charges complainant 6 cents per gallon more for same than it otherwise would because it is required by the state of South Carolina to pay a dealers' license tax of that amount. The suit is instituted against the members of the South Carolina tax commission to enjoin them from collecting this tax from the Standard Oil Company with respect to the gasoline sold complainant, on the theory that, as complainant is engaged in interstate commerce and uses the gasoline purchased in carrying on same, the tax is a burden on interstate commerce which may not be imposed by the state. Although complainant is not required to pay the tax itself, the burden of same falls upon it, and the doctrine laid down in Station WBT, Inc., v. Poulnot (D. C.) 46 F.(2d) 671, is invoked as sustaining the right of complainant to maintain the suit. There is no question but that the jurisdictional amount is involved.

The South Carolina statute imposing the tax is Act No. 102, approved March 16, 1929, S. C. Acts 1929 (36 St. at Large), pp. 107–113. The pertinent portion thereof is as follows: "That every oil company, person, firm or corporation doing domestic or intrastate business within this State, and engaging in the business of selling, consigning, using, shipping, or distributing for the purpose of sale within this State, any gasoline or any substitute therefor, or combination thereof, for the privilege of carrying on such business shall be subject to the payment of a license tax, which tax shall be measured by and graduated in accordance with the volume of sales of such oil company within the State. Every such oil company shall pay to the State an amount of money equal to six (6) cents per gallon on all gasoline, combinations thereof, or substitutes therefor, sold or consigned, used, shipped or distributed for the purpose of sale within the State." Section 1.

It may be well to note that the Act approved April 4, 1930 (Acts 1930 [36 St. at Large] pp. 1390–1392), imposing a tax of 6 cents per gallon on all persons importing gasoline into the state which is "intended to be stored or used for consumption in this State" (section 1), has no application to the case at bar. Complainant is not importing or storing gasoline for use in the state of South Carolina and is in no wise affected by that statute, whether it be constitutional or not. It is affected by the gasoline tax statutes only with respect to its purchases from the Standard Oil Company, and, as to these, only because that company is taxed on the basis of its sales and passes the tax on to its customers through an increase in the price charged them. The sole question in the case, therefore, is the validity of the tax imposed by the act of 1929 upon the Standard Oil Company when measured by its sales of gasoline which the purchaser intends to use and does use in carrying on interstate commerce. We think that the tax is valid.

We attach no importance to the fact that the tax is described in the statute as a privilege or license tax; for, where such tax is measured by sales, it is in effect a sales tax, whatever it may be called. Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 222, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583. And, although not a property tax within the meaning of the South Carolina Constitution, but an excise tax (Gregg Dyeing Co. v. Tax Commission [S. C.] —— S. E. ——[1]), it must be treated as in effect a tax upon the property sold for determining questions arising under the federal Constitution. Kehrer v. Stewart, 197 U. S. 60, 25 S. Ct. 403, 49 L. Ed. 663; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Brown v. Maryland, 12 Wheat. 425, 6 L. Ed. 678. But the rule is that the right of a state to tax property within its borders or transactions therein occur-

---

[1] Not yet released for publication.

ring is practically unlimited, except that it may not tax interstate commerce or burden such commerce by taxing the instrumentalities used in carrying it on or violate other constitutional provisions not here material. The sale, being completed within the state of South Carolina, is, of course, not a transaction in interstate commerce. The question in the case, then, comes to this, whether at the time of the sale, which is the transaction by which the tax is measured, the gasoline which is the subject of the sale can be regarded as an instrumentality of such commerce. We think this question must be answered in the negative. The gasoline assumes the character of such an instrumentality only because of the use made of it after the sale is complete.

▪ The question arises whether the fact that, at the time of the sale, the purchaser intends that the gasoline shall be used in carrying on interstate commerce and buys it for that purpose, affects the right of the state to tax the sale. The answer to this is that the criterion by which the right of the state is to be judged is not the intention of the purchaser but the status of the property at the time of the transaction. As said by Mr. Justice McKenna in Heisler v. Thomas Colliery Co., 260 U. S. 245, 259, 43 S. Ct. 83, 86, 67 L. Ed. 237: "If the possibility, or indeed certainty, of exportation of a product or article from a state determines it to be in interstate commerce before the commencement of its movement from the state, it would seem to follow that it is in such commerce from the instant of its growth or production, and in the case of coals, as they lie in the ground. The result would be curious. It would nationalize all industries, it would nationalize and withdraw from state jurisdiction and deliver to federal commercial control the fruits of California and the South, the wheat of the West and its meats, the cotton of the South, the shoes of Massachusetts and the woolen industries of other states at the very inception of their production or growth, that is, the fruits unpicked, the cotton and wheat ungathered, hides and flesh of cattle yet 'on the hoof,' wool yet unshorn, and coal yet unmined, because they are in varying percentages destined for and surely to be exported to states other than those of their production."

In Oliver Iron Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 529, 67 L. Ed. 929, the state of Minnesota had imposed a tax on the business of mining iron ore measured by a percentage of the value of the ore mined or produced. Substantially all of the ore when mined was loaded on cars and shipped into other states to satisfy existing contracts. In holding that the tax on production was not a burden on interstate commerce, though the ore was destined for transportation in such commerce even before it was mined, the court, speaking through Mr. Justice Van Devanter, said: "The ore does not enter interstate commerce until after the mining is done, and the tax is imposed only in respect of the mining. No discrimination against interstate commerce is involved. The tax may indirectly and incidentally affect such commerce, just as any taxation of railroad and telegraph lines does, but this is not a forbidden burden or interference."

The same holding has been made with respect to the production tax on gas (Hope Natural Gas Co. v. Hall, 274 U. S. 284, 47 S. Ct. 639, 71 L. Ed. 1049); a tax on coal prepared and "ready for shipment or market" and destined for a market in other states (Heisler v. Thomas Colliery Co., supra); and a manufacturing tax upon goods sold in interstate commerce (American Mfg. Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084). A state has the same right to tax sales that it has to tax the production of gas, the mining of coal, or the manufacture of merchandise; and, if destination of the product for use or shipment in interstate commerce does not affect the power of the state to tax in these cases, there is no reason why the intention that property sold should be used in carrying on interstate commerce should affect the right of the state to tax its sale. No one, we think, would contend that a railroad operating a coal mine could escape the production tax on coal because it was intended to use the coal in carrying on interstate commerce; and we see no reason why a sales tax on coal or on oil would not be equally valid.

The leading case dealing with the right of the state to tax property intended for interstate commerce is Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 478, 29 L. Ed. 715. In that case it was held that goods intended for transportation to another state are liable to taxation as a part of the general mass of property of the state in which they are situate until actually started in transportation to the state of their destination. The criterion applied in that and later cases (see Crescent Oil Co. v. Mississippi, 257 U. S. 129, 42 S. Ct. 42, 66 L. Ed. 166; Heisler v. Thomas Colliery Co., supra) is thus stated by Mr. Justice Bradley: "Such goods do not cease

to be part of the general mass of property in the state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation, to another state, or have been started upon such transportation in a continuous route or journey. We think that this must be the true rule on the subject. It seems to us untenable to hold that a crop or a herd is exempt from taxation merely because it is, by its owner, intended for exportation." While that case dealt with property intended for transportation in interstate commerce, it is clear that the same principle is applicable in the case of property intended for use in interstate commerce, and that such property is withdrawn from the taxing power of the state only when such use is actually begun.

A different question would be presented if the taxing statute made discrimination between ordinary sales of gasoline and sales of gasoline intended for use or transportation in interstate commerce. Such discrimination would constitute an attempt on the part of the state to burden interstate commerce which is not permissible. Cf. Welton v. Missouri, supra, 91 U. S. 277, 23 L. Ed. 347. But there is no discrimination in the tax here. Sales of gasoline intended for use in interstate commerce are taxed in the same way and at the same rate as other sales. The tax is a mere revenue measure imposed upon purely intrastate transactions, and there is no attempt whatever to discriminate against the gasoline which is intended for subsequent use in interstate commerce.

The case of Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683, upon which complainant particularly relies, is not in point. In that case a statute of Kentucky taxed the use of gasoline within the state. The state officials brought action to recover the tax from the operators of a ferry boat who purchased gasoline in Illinois and used same in operating an interstate ferry boat. The question of the right of Kentucky to tax sales of gasoline intended for use in interstate commerce was not involved. The question was the right of that state to tax the use in interstate commerce of gasoline purchased in another state. It was held that the state was without power to tax the use of an instrumentality of interstate commerce, which is manifestly a very different question from that involved in the right of the state to tax the sale within its borders of an article designed by the purchaser for use in interstate commerce. As said by Mr. Justice Suther-

land in Hart Refineries v. Harmon, 278 U. S. 499, 503, 49 S. Ct. 188, 189, 73 L. Ed. 475: "The difference between an excise tax based on sales and one based on use of property is obvious and substantial."

We have carefully examined the cases of U. S. Airways v. Shaw (D. C.) 43 F.(2d) 148, and Mid-Continent Air Express Corp. v. Lujan (D. C.) 47 F.(2d) 266, upon which complainant relies. In so far as these cases deny to a state the right to impose a tax on sales occurring within its borders because the purchaser intends to use the property purchased in carrying on interstate commerce, we think that they press the doctrine of the Helson Case too far; and, while we have great respect for the courts which rendered these decisions, we cannot follow them in that holding. It appears, however, that the statutes dealt with in these cases taxed the use of gasoline within the state and not merely the sale; and the right to tax the use in interstate commerce, as we have shown above, is a very different matter from the right to tax the sale before the use in interstate commerce begins. In so far, therefore, as these cases deal with the right to tax the use of gasoline in interstate commerce, they decide a question which is not before this court.

It is said, however, that the Supreme Court of South Carolina, in the recent case of Gregg Dyeing Co. v. Tax Commission, —— S. E. ——, has construed the gasoline tax statutes of South Carolina as intended to impose a tax on the ultimate consumer, and that hence the statute in question is to be treated as a tax on the use. We do not think that this conclusion follows. The Gregg Case passed upon the validity of the act of 1930 which imposed a tax upon gasoline brought into the state and intended to be "stored or used for consumption" therein, and, as we have seen, that statute is not here involved, nor is the portion of the former statute taxing use. It is true that the court adverted to the obvious shifting of the sales tax to the ultimate consumer and said that it was the purpose of the Legislature in passing the act of 1930 that all consumers should pay the gallonage tax of 6 cents; but the fact remains that, whether shifted or not, the tax imposed by the act of 1929 so far as measured by sales is a tax on sales occurring within the state, which the state has a right to tax. Even though the Legislature may have known that the sales tax would be shifted to the ultimate consumer by increase in price and may have passed the tax intending this result to follow, this did not affect its power

to tax sales as shown above, nor does it exempt sales from taxation merely because the purchaser may intend that the property purchased be used in interstate commerce. As said by Mr. Justice McKenna in Heisler v. Thomas Colliery Co., supra, 260 U. S. 245, 259, 43 S. Ct. 83, 86, 67 L. Ed. 237: "Whether any statute or action of a state impinges upon interstate commerce depends upon the statute or action, not upon what is said about it or the motive which impelled it."

Complainant relies upon the decisions in Panhandle Oil Co. v. Mississippi, supra, 277 U. S. 218, 48 S. Ct. 451, 452, 72 L. Ed. 857, 56 A. L. R. 583, and Indian Motorcycle Co. v. U. S., 283 U. S. 570, 51 S. Ct. 601, 604, 75 L. Ed. 1277, and argues that, because the state may not collect a sale tax upon a sale made to an agency of the federal goverment, nor the latter collect such tax upon a sale made to an agency of the state, such tax may not be collected from a sale made to one engaged in interstate commerce where the property is to be used in such commerce. The conclusion does not follow. In the case of a sale to the federal government or a state, it is the character of one of the parties to the transaction which exempts it from taxation. In the case of a purchase for use in interstate commerce, the character of the parties has nothing to do with the matter. It is the use in interstate commerce which exempts the property from taxation at the hands of the state; and, as heretofore shown, this use cannot arise until after the sale is complete. The basis of the decisions relating to the purchases by the state and federal governments is thus stated by Mr. Justice Butler in the Panhandle Oil Case: "The right of the United States to make such purchases is derived from the Constitution. The petitioner's right to make sales to the United States was not given by the State and does not depend on state laws; it results from the authority of the national government under the Constitution to choose its own means and sources of supply. While Mississippi may impose charges upon petitioner for the privilege of carrying on trade that is subject to the power of the State, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes."

And in the Indian Motorcycle Case, Mr. Justice Van Devanter stated the basis of the rule as follows: "Here the tax is laid directly on the sale to a governmental state agency of an article purchased for governmental purposes. The sale and purchase constitute a single transaction, in which the purchaser is an essential participant. Without that participation the sale could not be effected. Thus, the transaction falls within the class which the United States cannot tax consistently with the constitutional principle."

It is argued in support of the tax that, even if it be construed as a tax upon an instrumentality of interstate commerce, it should be sustained under the decisions of Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, and Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. It is said that the gasoline tax is devoted to the maintenance of the roads in South Carolina, and that, although the planes of complainant do not use the roads, the maintenance of the public roads is important to the carrying on of complainant's business, as such roads must be maintained to its airports for the benefit of its passengers, and as the upkeep of such roads leading to the cities near which its airports are located facilitates its business and increases its patronage. Much can be said in favor of this position. See Boeing Air Transport, Inc., v. Edelman (D. C.) 51 F. (2d) 130. We base our conclusion that the tax is valid, however, on the fact that the sale by which the tax is measured is not a transaction in interstate commerce, and that the gasoline sold does not become an instrumentality of such commerce until after the sale is complete.

For the reasons stated, we think that the interlocutory injunction prayed for should be denied.

Interlocutory injunction denied.