LINDSEY *et al. v.* WILLIAM GERST BREWING CO., INC.

*(Jackson,* April Term, 1934.)

Opinion filed July 23, 1934.

W. F. BARRY, JR., Assistant Attorney-General, for plaintiffs in error.

JACK NORMAN and W. C. CHERRY, both of Nashville, for defendant in error.

LYNCH, BACHMAN, PHILLIPS & LYNCH, of Chattanooga, and CHARLES M. BRYAN and BLAN R. MAXWELL, both of Memphis, Tenn., *amici curiæ.*

Mr. Justice Chambliss, delivered the opinion of the Court.

Questioning (1) the applicability of the privilege tax, laid by section 2, chapter 69, of the Public Acts of 1933, on the business of manufacturing, storing, and selling beer, conducted in Tennessee, to such portions of its product as might be sold after manufacture outside of this state and (2) the constitutionality of the act, if so construed and applied, the brewing company paid under protest the tax accruing under this disputed provision of the act, and brought this suit to recover. The section of the act in question reads as follows:

"Section 2. Be it further enacted, That every person, firm, corporation, joint stock company, syndicate or association in this State storing, selling, distributing and/or manufacturing such beer, and/or such other beverages as described above in this State shall pay a special privilege tax, in addition to all other taxes, in an amount equal to one and 20/100 ($1.20) Dollars per barrel of thirty-one (31) liquid gallons stored, sold, distributed by gift or sale and/or manufactured in this State. Provided that the tax herein imposed is a State tax and no county or municipality or taxing district shall have power to levy any like tax.

"This tax shall not apply to re-storage, re-sale, or re-distribution of beverages previously used as a measure of tax under the provisions of this Act."

Its enforcement, as above indicated, is challenged only as to its application to that small proportion of the product less than 10 per cent., sold beyond state lines, and, as alleged, in prohibitive competition with breweries located outside of Tennessee. The theory of the

brewing company is thus set forth, following the declaration, on its brief:

"I. The proper construction of section 2 of the Act in question does not lay this tax upon beer shipped outside the State.

"II. To declare that it does so levy this gallonage tax upon beer shipped outside of the State is to destroy the interstate commerce from Tennessee without any resulting benefit to the State, its treasury, its industry, or its labor and is therefore a void burden upon interstate commerce.

"III. At the time of the passage of chapter 69 of the Public Acts of 1933, April 14, 1933, breweries were the exclusive creatures of the Federal Government and the power to tax and regulate was exclusively in the Federal Government; and the only power the State had, then or now, was the concurrent power with the Federal Government to exercise the Police Power over its manufacture and had no power to impose a revenue tax.

"IV. This privilege tax conflicts with and destroys as to this subject, the interstate shipment of beer, the National Industrial Recovery Act and the Federal Alcohol Control Act, and for this reason would be void."

The trial judge overruled the demurrer of the defendants, the county court clerk, and state commissioner of finance and taxation, respectively, and they have appealed.

The demurrer challenged the sufficiency of the declaration, insisting (1) that the act imposes a tax on the privilege of manufacturing beer in Tennessee—that business or occupation—and lays no discriminatory, or unlawful, burden on interstate commerce; (2) that the act

imposing this tax in no way conflicts with the Eighteenth Amendment to the Federal Constitution, or with any act of Congress; nor has the federal government assumed or acquired exclusive control over the sale of beer; and (3) that the National Industrial Recovery Act (48 Stat. 195) is without application, and in no manner affects or impairs the right of the state to impose this privilege tax on the business of manufacturing this product.

We are unable to agree with learned counsel for the brewing company that, because a small portion of its product is sold and shipped to other states, this tax per barrel on the privilege of doing this manufacturing business in Tennessee imposes an unlawful burden on interstate commerce (see Const. U. S., art. 1, section 8, clause 3). Learned counsel quite apparently concede that manufacture is not commerce. They, of course, recognize that, in a long line of decisions, the United States Supreme Court has made the distinction clear between the unlimited power of the states to tax articles in process of manufacture and the lack of power to tax articles in interstate transit; and that the articles are manufactured (or the electricity generated, or the ore mined, or the gas produced) with the intent to ship the product interstate does not affect the rule. *Crescent Cotton Oil Co.* v. *Mississippi,* 257 U. S., 129, 42 S. Ct., 42, 66 L. Ed., 170; *Utah Power & Light Co.* v. *Pfost,* 286 U. S., 165, 52 S. Ct., 548, 76 L. Ed., 1038; *Hope Natural Gas Co.* v. *Hall,* 274 U. S., 284, 47 S. Ct., 639, 71 L. Ed., 1049; *Oliver Iron Mining Co.* v. *Lord,* 262 U. S., 172, 43 S. Ct., 526, 67 L. Ed., 929; *Kidd* v. *Pearson,* 128 U. S., 1, 9 S. Ct., 6, 32 L. Ed., 346. A case much in point on questions made here is *United Leather Workers' International Union* v. *Herkert, etc., Co.,* 265 U. S., 457, 44 S. Ct., 623, 625, 68 L. Ed., 1104,

33 A. L. R., 566. In that case, Chief Justice TAFT, distinguishing other decisions, quotes with approval from earlier cases: "The making of goods and the mining of coal are not commerce, nor does the fact that these things are to be afterwards shipped or used in interstate commerce, make their production a part thereof." And again: "Obstruction to coal mining is not a direct obstruction to interstate commerce in coal, although it, of course, may affect it by reducing the amount of coal to be carried in that commerce." This case clearly lays down the principle that mere reduction in the amount of products to be shipped does not lay a burden upon interstate commerce prohibited by federal law.

The insistence for the brewing company seems to be that interstate commerce is restricted or reduced, and in that sense "burdened," in this indirect manner: The amount of the tax levied on the business of manufacturing this beer is fixed by the act proportionately to the amount of beer manufactured, being $1.20 per barrel of beer. It is said that the state officials collect the tax monthly on the basis, not of the barrels manufactured, but of those sold in the preceding month; that the tax is therefore treated officially as a sales tax, and that, as to that portion of the sales shipped interstate, the tax is laid on goods in interstate commerce; that a burden is imposed thereby, in that the manufacturer in Tennessee is thus made to pay on goods sold in a foreign state a tax which manufacturers in such state and shippers into such state from other states do not have to pay; that the Tennessee manufacturer cannot meet this competition carrying this handicap; that the result is and will be that beer manufactured in Tennessee will not be shipped interstate, and thus interstate traffic will

be restricted and interstate commerce unlawfully burdened.

The predicate of this argument seems to us to be unsound. The tax is expressly laid on the manufacturer, or the seller, or the storer. The use of the "ands" and the "ors" extends the application to those who store only, or who sell only, or who manufacture only; to those who do either, or all. The defendant in error is a manufacurer of beer, and the fact that the collecting officers use the sales index for convenience does not change the law, or the character of the tax.

So we have here a case simply of a manufacturer of a commodity within this state insisting that a privilege tax on its business of manufacturing (graduated in amount according to the volume of production) has no lawful application to such of its product as it may elect to sell and ship over the state line; that, just in proportion as it sells its beer in some other state, or ships it there for sale, it is free from this tax obligation to the state in which it exercises the privilege of conducting its manufacturing business and produces for export this alleged exempt portion of it. The argument that this tax is a sales tax, and a tax on interstate sales, apparently rests on (1) the circumstances of the method adopted by the Legislature of computing, or measuring, the tax. (With the evident design of distributing this tax burden fairly, instead of naming a fixed sum for each and every manufacturer to pay proportioned to his capital, or his investment, or the quantity and size of his machinery, without reference to actual production, this more equitable method was chosen.) And on (2) the theory that the act applies only to those who both manufacture and sell, despite the careful and repeated use of the alterna-

tive "or" in the designatory clauses of the act. It is suggested on the briefs that this alternative "or" does not appear in the caption. It was not called for there. The caption was generally inclusive, enumerating all the different classes, or branches of the business regulated by the act; namely, "the sale, transportation, storage, possession, receipt, manufacture and distribution" of beer. Notice was given that all or any of these were to be regulated and taxed by the act. But this did not imply that one would be affected only in case he did all of these things.

We find no support for the insistence that the federal government has pre-empted the field of control of the manufacture and traffic in beer. We find no conflict between the Eighteenth Amendment or the Act of Congress (27 U. S. C. A., section 64a et seq.), and the right of the state to tax the business of manufacturing of beer.

Nor can we agree that the National Industrial Recovery Act, as ingeniously argued, is to be construed as such a taking over by Congress of the regulation and control of this and other private manufacturing business as to deprive the states of the power to exercise their taxing privileges thereon. If this is true of the business or occupation of manufacturing beer, then it must be likewise true of all other products brought by that act under code regulations. And the argument applies no more, upon analysis, to tax burdens resulting from the levy of privileges, than to those resulting from *ad valorem levies*. Manifestly, this act of Congress can be given no such far-reaching and state sovereignty destroying effect. The judgment is reversed, and the suit dismissed.