## UNITED STATES et al. v. SUPERIOR PRODUCTS, Inc., et al.

### No. 1884.

District Court, D. Idaho, S. D.

Feb. 9, 1935.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho, for complainants.

Oppenheim & Lampert, of Boise, Idaho, for defendants.

CAVANAH, District Judge.

The United States and the Secretary of Interior seek to restrain and enjoin the defendants from violating the code of fair competition for the petroleum industry as promulgated in pursuance of the National Industrial Recovery Act when engaged in

the business of selling and distributing at retail to consumers of gasoline, motor fuel, and heating oil at their place of business in the city of Boise, state of Idaho. In answer to an order to show cause why a preliminary injunction should not be issued pendente lite, the defendants move to dismiss the bill and also answered. Upon request of counsel, the motion to dismiss the bill will first be disposed of.

The defendants are engaged in the business within the city of Boise, Idaho, of selling, and offering for sale, at retail to consumers, gasoline, motor fuels, motor lubricants and heating oil, which is produced and purchased outside of the state of Idaho and sold and distributed by them entirely within the state. The code claimed to have been violated was approved by the President by authority of section 3 (a) and section 10 (b) of title 1 of the National Industrial Recovery Act (15 USCA §§ 703 (a), 710 (b).

The codes approved by the President and which it is alleged in the bill that the defendants violated are: Article 5, rule 2, and paragraphs 4, 5, 6, 7, 8, 9, and 10 of article 5, rule 3.

By executive order the President designated the Secretary of Interior as administrator and the Department of Interior as the federal agency to exercise all of the powers vested in him under the Recovery Act, and to appoint such agents and set up such boards and agencies as he may see fit and to promulgate such rules and regulations as he may deem necessary. The violation of the codes consists in the statement that defendants from and after June 1, 1934, when engaged in the sale of gasoline at retail to consumers, kept conspicuously posted at their place of business, from which delivery was made, retail prices at which their "Union 76" brand or grade of gasoline was sold, and in the same manner kept separately posted all taxes they were required to pay or collect because of the sale of gasoline, and that such prices so posted remained in effect for at least twenty-four hours after the same were posted, and beginning about June 27, 1934, and continuing thereafter until the present time, they violated paragraphs 5 and 7 of article 5, rule 3 of the code as modified, in that they deviated from the posted price by means of rebates, allowances, concessions, benefits, and other devices, by retailing "Union 76" gasoline and certain of its petroleum products to consumers at prices less than the posted price of 24 cents per gallon, and by so doing did rebate to them the sum of 2 cents per gallon.

The further allegation appears that from June 27, 1934, defendants purchased all of their gasoline so sold by them in violation of the code provisions outside of the state of Idaho, and caused it to be transported into Idaho, for the purpose of resale to retail consumers. Then follows a somewhat lengthy statement in the bill as to how the transactions and violations of the code affected interstate commerce which relate to reasons and conclusions given.

The provisions of the Recovery Act and codes referred to are attacked as an unconstitutional delegation to the President of legislative power and are challenged also under section 8, art. 1, and the Fifth and Tenth Amendments of the Constitution.

We cannot escape consideration first of the fundamental question as to the constitutionality of the provisions of the Recovery Act under which authority is claimed to adopt the codes. The provisions of the Constitution which must be considered and are applicable here are:

First. That "all legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Article 1, § 1. And under clause 18 of section 8, art. 1, Congress is empowered "to make all Laws which shall be necessary and proper for carrying into Execution" its general powers.

Second. That under the "Commerce Clause" power is granted to Congress "to regulate Commerce with foreign Nations, and among the several States," and, as the power of the federal government is one of delegated power from the several states, those powers not delegated are by the Tenth Amendment expressly reserved to the states, and any law enacted by Congress must stand or fall by the test of the "Commerce Clause" article 1, § 8, cl. 3, and Tenth Amendment.

Third. The right of the owner of property to fix a price at which his property shall be sold or used is within the protection of the due process law clauses of the Fifth and Fourteenth Amendments.

When the validity of an act of Congress is assailed, we are bound to discover in the Constitution either express or implied grant of authority to Congress to enact such legislation, and, when the acts of an officer of the United States are drawn in question, we

must find, not only constitutional authority to Congress to enact the law, but legal delegation of authority to the officer who has assumed to act. It would seem not to require any extended discussion as to what article 1, sections 1 and 8, and the Fifth and Fourteenth Amendments mean, after a study of the history of their adoption and the general interpretation given by the courts, but, when the validity of an act of Congress is assailed under provisions of the Constitution, we must look to the particular transaction and acts which the act attempts to deal with in order to get a clear understanding as to what the framers of the Constitution had in mind and intended the provisions to mean, so we pass at once to an analysis of the provisions of the codes invoked here and ascertain just what they contain and require to be done.

Article 5, rule 2, provides: "Where any merchant or vendor of petroleum also engages in the sale of other products, such as motor vehicles, tires, dry goods, etc., for which a code of fair competition has been duly approved by the President, or in the rendering of services in connection with such products or in any other trade or industry, such as the garage industry, operating under a code of fair competition duly approved by the President, the following rules shall determine which code shall apply as regards." The rules referred to relate to hours, wages, and conditions of employment.

Article 5, rule 3, provides:

Paragraph 4: "All retailers, and others who sell to consumers, shall conspicuously post at the place from which delivery is made, and at places there readily accessible during business hours to the public, one price at which each brand, grade, or quality of Naphtha, gasoline, motor fuel, lubricating oil, grease, kerosene, and heating oil are sold. All retailers and others who sell to consumers, unless prevented therefrom by applicable law, shall separately post in the same manner all tax they are required to pay or collect because of the sale of naphtha, gasoline, motor fuel, lubricating oil, grease, kerosene, or heating oil. All prices posted shall remain in effect for at least twenty-four (24) hours after they are posted."

Paragraph 5: "All sales shall be made at the posted prices applicable to the brand, grade, or quality of the commodity sold."

Paragraph 6: "Coupon books or other scrip of any nature, if used, shall be sold and redeemed at their face value without any discount."

Paragraph 7: "No one shall make any deviation from his posted price by means of rebates, allowances, concessions, benefits, scrip books or any other device whereby any buyer obtains any naphtha, gasoline, motor fuel, lubricating oil, grease, kerosene or heating oil at a net lower cost than the applicable posted price; provided, however, that commercial consumers may secure gasoline, motor fuel and other oils, on contract quantity basis under conditions established by the President after such conditions have been first considered and recommendations have been made in regard thereto by the Planning and Coordination Committee."

Paragraph 8: "The provision of all previously executed then existing contracts regarding price will be available for inspection upon the direct request of any competitor, unless such request shall be made for the purpose of unfairly obtaining information, in which event the decision whether such contract shall be made available shall be made by the authority, committee, or commission provided in Rule 4 of this Article, or such agency as it may designate."

Paragraph 9: "On a change in the posted price no adjustments, allowances, credits or refunds shall be given to any buyer on deliveries already made."

Paragraph 10: "Abnormal deliveries in anticipation of price advance and acceptance of orders for subsequent deliveries at prices effective before advances, are prohibited."

The claimed authority of the President to act in adopting the codes is found in section 3 (a) and section 10 (b) of title 1 of the National Industrial Recovery Act (15 USCA §§ 703 (a), 710 (b), which provide:

Section 3 (a): "Upon the application to the President by one or more trade or industrial associations or groups, the President may approve a code or codes of fair competition for the trade or industry or subdivision thereof, represented by the applicant or applicants, if the President finds (1) that such associations or groups impose no inequitable restrictions on admission to membership therein and are truly representative of such trades or industries or subdivisions thereof, and (2) that such code or codes are not designed to promote monopolies or to eliminate or oppress small enterprises and will not operate to discriminate against them, and will tend to effectuate the policy of this title: Provided, That such code or codes shall not permit monopolies or monopolistic practices: Provided further, That where such code or codes affect

the services and welfare of persons engaged in other steps of the economic process, nothing in this section shall deprive such persons of the right to be heard prior to approval by the President of such code or codes. The President may, as a condition of his approval of any such code, impose such conditions (including requirements for the making of reports and the keeping of accounts) for the protection of consumers, competitors, employees, and others, and in furtherance of the public interest, and may provide such exceptions to and exemptions from the provisions of such code, as the President in his discretion deems necessary to effectuate the policy herein declared."

█ Section 10 (b): "The President may from time to time cancel or modify any order, approval, license, rule, or regulation issued under this chapter; and each agreement, code of fair competition, or license approved, prescribed, or issued under this chapter shall contain an express provision to that effect."

These provisions of the act purport to give to the President power to approve codes upon application to him of one or more trade or industrial associations or groups whereby he fixes terms and conditions for the conduct of the business of buying and selling gasoline, and he may in his discretion provide exemptions from the codes and cancel or modify any order or regulation at any time and in his judgment eliminate restrictions on admission to membership in the association or groups, and any violation thereof is punishable by a fine of not to exceed $500 or imprisonment of not to exceed six months or both. The act fails to authorize the President, or any other, to fix either wholesale or retail gasoline or any prices, or set up any standard or rule of any unfair practices or charges to operate as a guide to or limitation upon the power of the President and it authorizes him to prescribe codes and rules for conducting the business and make the law which is applicable to such business. This is clearly an attempt by Congress to transfer to the President a necessary function with which it is vested and which it cannot do under section 1, article 1, and clause 18, § 8, art. 1, of the Constitution. This interpretation of these provisions of the Constitution was recently announced by the Supreme Court in the cases of Panama Refining Co. et al. v. Ryan et al. (Amazon Petroleum Corporation et al. v. Ryan et al.), 55 S. Ct. 241, 248, 79 L. Ed. ——, decided January 7, 1935, where the court held that

Congress cannot delegate legislative power to the President under a provision of the National Industrial Recovery Act, relating to the transportation in interstate commerce of petroleum and products thereof, whereby authority was attempted to be given to the President to prohibit such transportation, and he by executive order prohibited the transportation in interstate commerce of petroleum produced or withdrawn from storage in excess of the amount permitted by state law, as Chief Justice Hughes expressed it: "The Congress manifestly is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national Legislature cannot deal directly. * * * But the constant recognition of the necessity and validity of such provisions and the wide range of administrative authority which has been developed by means of them cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained." This decision would seem decisive of the question we have in the present case. See Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294.

█ However, the attempt is made in the bill to bring the authority to adopt the provisions of the Recovery Act and the codes under the "commerce clause" because it is urged that the gasoline is purchased and shipped into the state of Idaho, and there sold by the defendants, and also, as gasoline is shipped from one state to another by others, therefore the acts of the defendants may be considered as affecting interstate commerce. Of course, we are only concerned with that question so far as it affects the defendants and the manner in which they conducted their business. To say that the sales made by the defendants at their place of business within Idaho, and nothing else done by them, excepting that the gasoline is imported into Idaho, are transactions in interstate commerce, is not supported by precedent nor reason. When the gasoline imported from another state has been brought into the state of Idaho and placed in the tanks of the defendants and becomes part of their stock and sold or offered for sale by them, it has come to a state of rest and the interstate transaction was at an end. The transaction was completed as far as they were concerned. Under such circumstances, the Supreme Court

has definitely settled the principle that such a transaction does not come under the "Commerce Clause." Many instances and transactions such as manufacturing and marketing of articles, mining of ore, piping of gas, and generating of electricity, etc., which are afterward shipped from one state into another, have been regarded by the Supreme Court in numerous cases as not being interstate commerce. Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; Public Utilities Commission et al. v. Landon et al., 249 U. S. 236–245, 39 S. Ct. 268, 63 L. Ed. 577; Ware & Leland v. Mobile County, 209 U. S. 405, 28 S. Ct. 526, 52 L. Ed. 855, 14 Ann. Cas. 1031; Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038; Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; Crescent Cotton Oil Co. v. Mississippi, 257 U. S. 129, 42 S. Ct. 42, 66 L. Ed. 166.

In United States v. Sutherland et al., 9 F. Supp. 204, the District Court of the United States for the Western District of Missouri recently decided in a case parallel to the present case where the validity of the provision of the Industrial Recovery Act granting authority to the President to approve codes of fair competition for trades and industries were involved, and which affected the retail lumber trade of the defendants who were the owners of retail lumber yards in Nebraska, Iowa, Missouri, and Oklahoma, where the stock in each yard was made up of lumber purchased and shipped to the yards from other states, the court held that the act did not authorize the President to fix prices and prescribe a standard or rule of unfair practices, or that authority was granted to Congress under the "Commerce Clause" to enact the provisions of the Recovery Act and codes when applied to the transaction there involved. The court gave many illustrations applicable as to why the transaction was not one in interstate commerce, and asserted that, if such transaction was in interstate commerce, then every sale made by any merchant either to a resident or nonresident of the state is a transaction in interstate commerce.

In United States v. Miles (D. C.) 7 F. Supp. 547, the government asked to enjoin the defendant, a retail vendor of gasoline, against premium giving under a rule approved by the President under the Recovery Act. It was there charged that the defendant in the course of his business at times gave away articles of merchandise in connection with sales of certain quantity of gasoline. The defendant based his resistance to the enforcement of the rule against him on the ground that the Recovery Act is invalid and that the enforcement of the rule against him will deprive him of property without due process of law. The principal question decided by the court was whether particular provision of the petroleum code is within the scope of the power of Congress to regulate commerce among the several states. The activity of the defendant was that he is the proprietor of four gasoline filling stations, two of which were in the state of Maryland and two in the state of Pennsylvania. He purchased his gasoline in the state of Maryland. The court held that the interstate commerce involved in the shipment from Maryland to the Pennsylvania filling stations, and the procuring of the crude petroleum which was refined into gasoline in Maryland by the Republic Refining Company from Texas, had ceased when the gasoline was placed in the filling tanks in Pennsylvania, and that the retail sales made by the defendant were made to ultimate consumers and were not intended for movement in interstate commerce, and that he was engaged purely in internal commerce of the state and not in commerce among several states. The conclusion there reached was that the code was not enforceable against the defendant because his business was local and one in intrastate commerce.

Viewed then on the facts disclosed by the bill, the activity sought to be enjoined does not affect or burden commerce among states, as the retail sales of the gasoline by defendants is nothing more than local to Idaho, and, if such be correct, then the act and codes in question deprive the defendants of property without due process of law, in violation of the Fifth and Fourteenth Amendments.

Stress is laid on the reasoning given in certain decisions of the Supreme Court which presented a state of facts not at all similar to the present case, and, as each case must be considered upon its particular facts, which is necessary when applying the "Commerce Clause," they are not applicable to the transaction and manner in which these defendants conduct their business.

The motion to dismiss is sustained.