## MANDEVILLE ISLAND FARMS, Inc., et al. v. AMERICAN CRYSTAL SUGAR CO.

### No. 4643.

District Court, S. D. California, Central Division.

Jan. 9, 1946.

Wood, Crump, Rogers & Arndt, of Los Angeles, Cal., for plaintiffs.

O'Melveny & Myers, of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This action comes before me on a motion to dismiss the amended complaint of certain sugar beet growers, who are seeking treble damages under the Anti-Trust Act, Secs. 1 to 7, 15 note, Title 15 U.S.C.A., from the defendant sugar refiner, alleging a conspiracy, the effect of which prevented the sale of sugar beets on a free and open competitive market. The motion to dismiss is based on the ground that the raising of sugar beets has no direct effect upon interstate commerce and therefore does not come within the purview of the Anti-Trust Act.

The amended complaint alleges in effect that the plaintiffs are growers of sugar beets north of the 36th parallel in California and the only outlets for their products are three certain sugar refineries located in the same area within the State of California; that the sugar refineries in said area entered into a conspiracy in violation of Section 1, Title 15 U.S.C.A., whereby each refiner agreed to pay the growers the same price for sugar beets and entered into identical contracts with all the growers of said area. The identical contracts among other things provided:

"2. The seed to be used in growing said beets shall be furnished by the Company for the price of fourteen cents (14 cents) per pound, which the grower agrees to pay. Seed furnished by the company shall not be planted upon any land not contracted to the Company. Any seed furnished by the Company and not planted shall be returned in good order to the Company, at the end of the planting season, and the Grower credited therefor. No credit will be given for seed not returned prior to July 1, 1940."

"5. All sound beets grown in accordance with and under this contract shall be bought by the Company and paid for by it according to the following terms and schedule of prices:

"The price per ton (2,000 pounds) for beets delivered hereunder to the Company shall be determined upon the average net returns (said net returns being defined in Paragraph No. 6 hereof) received for sugar manufactured at beet sugar factories located in California north of the 36th parallel, and sold during the period of twelve months commencing August 1, 1940, and based upon the Company's test of sugar content of the individual grower's beets in accordance with the following schedule: (Schedule omitted)"

It is further alleged that prior to the said conspiracy the contracts of the defendant provided that the price paid for sugar beets would be based upon the net returns of the defendant, instead of the average net returns of all the sugar refineries in said area; that during the crop years complained of the defendant received

.265 cents per pound more for its raw sugar than the other refineries and as a result of said conspiracy the plaintiffs have received less for their sugar beets than they would have received except for said conspiracy.

Plaintiffs further complain that they failed to receive the fair market value for said sugar beets in accordance with the fair market price fixed by the Secretary of Agriculture; that the difference actually received by them and the price fixed by the Secretary of Agriculture represents the damages suffered by them and under the provisions of the Anti-Trust Act said damages should be trebled.

From the complaint it appears that the net result of the conspiracy is that all beet growers in said area received the same price for their sugar beets and, while the plaintiffs may have suffered a detriment, growers delivering their beets to other sugar refineries received an advantage.

The complaint coupled with the contracts attached thereto as exhibits clearly establish that the sugar refineries were working in concert in the purchase of sugar beets from the grower plaintiffs. This brings us to the main question of law raised by the motion to dismiss.

■ The defendant contends that the raising of the beets, the sale to the refineries for the purpose of processing the same into sugar is an intrastate matter and beyond the reach of the Anti-Trust Act. With this contention I agree.

In the case of Coe v. Town of Errol, 116 U.S. 517 at page 526, 6 S.Ct. 475, 477, 29 L.Ed. 715, the court stated:

"There must be a point of time when they cease to be governed exclusively by the domestic law, and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of their origin to that of their destination. When the products of the farm or the forest are collected, and brought in from the surrounding country to a town or station serving as an entrepot for that particular region, whether on a river or a line of railroad, such products are not yet exports; nor are they in process of exportation; nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state. Until then it is reasonable to regard them as not only within the state of their origin, but as a part of the general mass of property of that state, subject to its jurisdiction, and liable to taxation there, if not taxed by reason of their being intended for exportation, but taxed, without any discrimination, in the usual way and manner in which such property is taxed in the state."

To the same effect see Crescent Cotton Oil Co. v. State of Mississippi, 257 U.S. 129, 42 S.Ct. 42, 66 L.Ed. 166.

The case closest in point is Dothan Oil Mill Co. v. Espy, 220 Ala. 605, 127 So. 178, 179, 182, wherein the court had before it the identical question now before this court. The court covered the question in the following language:

"We are not of opinion, however, that the business of buying cotton seed, confined wholly to the state, to be crushed and manufactured into oil and other products, in such state, constitutes interstate commerce, within the scope and purpose of said act or within the sense of the Sherman and Clayton Acts (15 U.S.C.A. §§ 1–7, 15 and sections 12–27, 44) which confer on the federal courts exclusive jurisdiction to enforce said acts, though some of the manufactured products may eventually find their way into and become commodities of interstate commerce. 'The fact, of itself, that an article when in the process of manufacture is intended for export to another state does not render it an article of interstate commerce.' Crescent Cotton Oil Co. v. State of Mississippi, 257 U.S. 129, 42 S.Ct. 42, 44, 66 L.Ed. 166; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; New York Central R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502, 9 A.L.R. 496.

"Though, under the provisions of section 26, tit. 15, of the United States Code Annotated, a private individual may maintain a suit to enjoin acts interfering with interstate commerce, in a proper case, the acts complained of must be immediately and directly against such commerce. Gable v. Vonnegut Mach. Co. et al. 6 Cir., 274 F. 66; Anderson v. Shipowners' Association of Pacific Coast, 272 U.S. 359, 47 S.Ct. 125, 71 L.Ed. 298.

"These observations are sufficient to justify a denial of appellants' contention

that, on the case made by the bill, the Federal District Court, only, has jurisdiction to grant the relief prayed. Home Telephone Co. v. Michigan R. Commission, 174 Mich. 219, 140 N.W. 496."

In Utah-Idaho Sugar Co. v. Federal Trade Commission, 8 Cir., 22 F.2d 122, 125, the court had before it for consideration the very subject matter involved in this litigation, namely, sugar and sugar beets. The court therein stated:

" 'In the present case there is no commerce to obstruct until the beets are manufactured into sugar and such sugar has been placed in transport. The argument is however, as stated above, that the acts here cut off at the source such commerce. It is only such acts as directly interfere with commerce which come under the federal jurisdiction. The line must be drawn somewhere, else all jurisdiction in trade or production would become federal. Hence Congress has not jurisdiction of such acts as only indirectly or remotely affect commerce. In the instant case if interference with the production and manufacture into sugar of beets is an obstruction to a later or unborn commerce in sugar to be made from the beets, one who intrastate sold defective beet seed, thus preventing the production of beets to be manufactured into sugar, would be in commerce, or one who sold fertilizer to raise the seed to plant the beets to make the sugar to be shipped in commerce would be in commerce.'

"To the cases cited by Commissioners Van Fleet and Gaskill on the proposition that the production of sugar beets and their manufacture into sugar does not constitute interstate commerce, may be added the later case of United Leather Workers' International Union Local Lodge or Union No. 66 v. Herkert & Meisel Trunk Co., 265 U.S. 457, 462, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566, and the cases there cited. We think it clear that the conduct on which the Commission's findings were made went no farther than an interference with the raising of sugar beets and the manufacture of sugar therefrom, and that those transactions were beyond the power and outside the scope of regulation given to the Commission by the Act of Congress under which its order was made."

In the case of Parker, Director of Agriculture, et al. v. Brown, 317 U.S. 341, 361, 63 S.Ct. 307, 318, 87 L.Ed. 315, arising in our own district, we find some pertinent language wherein the court stated:

"All of these cases proceed on the ground that the taxation or regulation involved, however drastically it may affect interstate commerce, is nevertheless not prohibited by the Commerce Clause where the regulation is imposed before any operation of interstate commerce occurs. Applying that test, the regulation here controls the disposition, including the sale and purchase, of raisins before they are processed and packed preparatory to interstate sale and shipment. The regulation is thus applied to transactions wholly intrastate before the raisins are ready for shipment in interstate commerce.

"It is for this reason that the present case is to be distinguished from Lemke v. Farmers Grain Co., 258 U S. 50, 42 S.Ct. 244, 66 L.Ed. 458 and Shafer v. Farmers Grain Co., 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909, on which appellee relies. There the state regulation held invalid was of the business of those who purchased grain within the state for immediate shipment out of it. The Court was of opinion that the purchase of the wheat for shipment out of the state without resale or processing was a part of the interstate commerce. Compare Chassaniol v. Greenwood [291 U. S. 584, 54 S.Ct. 541, 78 L.Ed. 1004.]"

It appears clear that the decisions of our courts have consistently held throughout the life of the Anti-Trust Act that products of the farm which are subsequently manufactured or processed into articles of commerce are beyond the reach of said Act.

▆▆▆ I am further of the opinion that the plaintiffs have precluded a recovery on the ground that they are in effect co-conspirators. When they entered into the contracts with the refiners, they joined the conspiracy and furthered the object of the same. The contracts were entered into before the planting of the seed and when they agreed and became a party to the fixing of the prices to be received by the growers, they became a party to the conspiracy. Under such circumstances they are precluded from any recovery. 19 R.C. L. p. 28; Connolly et al. v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679; Harriman et al. v. Northern Securities Co., 197 U.S. 244, 25 S.Ct. 493, 49 L.Ed. 739; Bishop v. American Preservers Co. et al., C.C.Ill., 105 F. 845; Bluefields S. S. Co., Ltd., v. United Fruit Co., 3 Cir., 243 F. 1; Maltz v. Sax et al., 7 Cir., 134 F.2d 2; Northwestern Oil Co.

v. Socony Vacuum Oil Co., Inc., et al., 7 Cir., 138 F.2d 967.

Defendant is entitled to judgment of dismissal and is directed to submit to me proposed judgment in accordance with this opinion.